ALBANY,
Jan. 1832.

Baker
v.
Wheeler.

---

## BAKER vs. WHEELER & MARTIN.

A *license*, by one or two *tenants in common*, who are also partners in the lum
ber business, to a third person, to cut timber on the lands held in common
from which the tenants in common procure timber to carry on their busi-
ness, is good, and confers title to timber cut by such person, especially
where the license is in satisfaction of a demand due from both tenants in
common.

The *rule of damages* in an action of *trover* is a question of law, not to be sub-
mitted to the discretion of a jury.

Where property is *tortiously* taken, the plaintiff is entitled to recover its *en-
hanced value*; e. g. where *saw logs* are taken and converted into *boards* and
*plank*, the plaintiff is entitled to recover the value of the boards and plank,
and is not confined to the value of the logs, either in the woods or at the
place where they are sawed into boards and plank.

So also he is entitled to *interest* on the value thus ascertained.

This was an action of *trover*, tried at the Washington cir-
cuit, in June, 1831, before the Hon. ESEK COWEN, one of the
circuit judges.

The action was brought to recover damages for the conver-
sion of a quantity of *saw logs*. The parties in this case were
the joint owners of the three lots of land covered with timber,
of which they may made a division between themselves, as-
signing one lot to the plaintiff, and two to the defendants, who
were partners in the lumber business. The division lines be-
tween the lots not being run, it was agreed between the par-
ties, that if either party encroached upon and took the timber
of the other, an equal quantity of timber should be assigned to
the party losing the timber, to be taken from the lands of the

party encroaching. It was subsequently ascertained that the *defendants* had taken upwards of 13,000 feet of timber from the lot of the *plaintiff*, and in pursuance of the original agreement, a certain portion of the lands of the defendants was assigned, from which it was agreed that the plaintiff might take a quantity of timber equal to that he had lost. He accordingly proceeded to do so; but it was found that within the prescribed bounds he could not procure the quantity he was entitled to, by 5,560 feet. Wheeler, *one of the defendants*, then agreed that the plaintiff might take that quantity from another portion of the lands of the defendants, and might take it in *saw logs* instead of square timber. In the winter of 1823 the plaintiff procured 220 saw logs to be cut at the place last assigned. These logs, it was alleged by the plaintiff, were taken by one *Thompson*, the servant of the defendants, from *South Bay*, on Lake Champlain, to a mill at *Fort Edward*, on the Hudson river. It was proved that *Thompson* did take logs to the mill at Fort Edward, that they were credited by the owners of the mill to the defendants and sawed into boards and plank, which were carried to market. Whether the logs brought to the mill were the logs of the *plaintiff*, and whether Thompson was the *servant* of the defendants, were questions submitted to the jury. It was also proved that the value of logs in the woods where they were cut, was $1,12½ per piece, and that each log at Fort Edward would make *sawed stuff* to the value of from two to three dollars. The defendant offered to prove the value of *logs* at Fort Edward, but the judge refused to receive the testimony. The judge charged the jury, that if they should find that Thompson was the servant of the defendants and took the logs of the plaintiff, and that the defendants subsequently converted the logs, or the boards and plank made thereout, to their use, they were liable to the plaintiff; that if the logs were taken to Fort Edward and sawed into boards and plank, the plaintiff was entitled to the value of the sawed stuff, together with interest thereon; but if they were not taken to Fort Edward, then the plaintiff was entitled only to their value in the woods, viz. $1,12½ per piece. The jury found a verdict for the plaintiff, with $602,80 damages, which verdict the defendants moved to set aside.

*R. Weston*, for defendant.

*S. Stevens*, for plaintiff.

*By the Court*, SAVAGE, Ch. J. The plaintiff shewed sufficient title to the logs in question; the defendant Wheeler gave him license to cut them on the land of the defendants, who were tenants in common of the land, and partners in the lumbering business. Though the defendants were partners, there is no partnership in real estate, 15 Johns. R. 160; the partners are tenants in common; but I apprehend that tenants in common in timber land, who are also partners in the lumber business, are partners of the timber when converted into logs. In *Martyn* v. *Knowllys*, 8 T. R. 145, it was decided that no action lay in the nature of waste, by one tenant in common against another, for cutting down trees of a proper age and growth for being cut, and Lord Kenyon said: "If one tenant in common were liable in such an action, it would have the effect of enabling him to prevent the other tenant in common taking the fair profits of their estates; in another form of action he might recover a moiety of the value of the trees that were cut." This case decides that one tenant in common may cut trees proper to be cut, on the land held in tenancy in common, and the remedy of the co-tenant is in an action against the co-tenant cutting the timber, for his share of the value. If one tenant in common may cut himself, he may give license to another; here the license was given in satisfaction of a fair demand against both tenants in common, and on that ground the plaintiff had title to the logs. But there is another ground, both defendants agreed before the timber was cut on the plaintiff's land by the defendants, that if they did cut on the land of the plaintiff, he might cut as much on their land. The plaintiff has cut no more on the defendants' land than they cut on his land. It is said that the plaintiff was concluded by accepting the timber assigned; but it cannot be doubted that it was competent for the defendant Wheeler to waive that acceptance, and the plaintiff's claim to the logs rests on the agreement of both defendants.

As to the conversion there can be no doubt; if the title be admitted in the plaintiff, and that the same logs were sawed by the defendants, that is a conversion.

Whether the evidence was sufficient to prove that Thompson was the servant of the defendants, was a question for the jury; but as there is a point in the case that the verdict is against the evidence, it is proper to say that there was enough to establish such relation. A. Eddy proves that Thompson was employed by the defendants in the year 1824; T. Eddy proves that Thompson got logs for defendants only one season, and that was in 1823, 4 or 5. The two witnesses prove the fact that Thompson brought the logs from Lake Champlain in 1824 for the defendants, and that they sawed them into boards and plank and sold them.

The only remaining enquiry is, whether the judge was correct in stating the rule of damages to the jury. The judge was right in saying that the rule of damages was a question of law; the jury are to ascertain the quantum of damages according to the rules of law. That the party whose property has been *tortiously* taken is entitled to the enhanced value, until it has been so changed as to alter the title, is a doctrine as old as the year books. In this court it has been held that the owner of timber may reclaim it when made into shingles, 5 Johns. R. 348, 9, and the law in England is stated to go much further: that whatever alteration of form any property has undergone, the owner may seize it in its new shape, if he can prove the identity of the original materials—as leather made into shoes, cloth into a coat, trees squared into timber. In *Curtis* v. *Groat*, 7 Johns. R. 168, this principle was applied to wood converted into coal; the court say, " The defendant's timber, by being cut and converted into coal, had indeed lost its primitive form, but the identity of the original material was here ascertained or admitted." In *Babcock* v. *Gill*, 10 Johns. R. 237, it was applied to *pearl ashes* made out of *black salts ;* and *Brown* v. *Sax*, 7 Cowen, 95, was just like this case, except that there the logs were cut on the plaintiff's land. Here the title to the logs was in the plaintiff, though they were cut on the defendant's land.

Interest is properly given in *trover*, as well as the value of the property converted. Without recapitulating the evidence, it is enough to say that it justified the verdict.

New trial denied.