By the Court, Nelson, Ch. J.
Even conceding that the settlement with the sheriff for the taking and conversion of the grain was' inoperative, (which I should not be willing to admit, if made m good faith,) still, a decisive answer to the defence is, that the identity of the grain was destroyed by ' the act of manufacturing it into whisky, and the property in "the new article vested in the plaintiffs. The doctrine on this subject is stated by Blackstone, as follows: “ By the Roznan law, if any given corporeal substance received after-wards an accession by natural or by artificial means, as by the growth of vegetables, the pregnancy of animals, the embroidering of cloth, or the conversion of wood or metal into vessels and utensils, the original owner of the thing was entitled by his right of possession to the property of it under such its state of improvement. But if the thing itself, by such operation, was changed into a different species, as by making wine, oil or bread, out of another’s grapes, olives or wheat, it belonged to the new *427 operator; who was only to make a satisfaction to the former proprietor for the materials which he had so converted. And, these doctrines are implicitly copied and adopted by our Bracton, and have since been confirmed by many resolutions of the courts.” (2 Bl. Comm. 404; and see Bro. Ab. tit. Property, 23 ; Moore. 20; Poph. 38; Vin. Ab. tit. Trespass, (H. a. 3,) pl. 8; id. tit. Property (E.) pl. 5; Betts v. Lee, 5 Johns. Rep. 348; 2 Kent's Comm. 364.) The same doctrine was laid down in Brown v. Sax, (7 Cowen, 95.) The court there said“ The rule, in case of a wrongful taking is, that the taker cannot, by any act of his own, acquire title, unless he either destroy the identity of the thing; as by changing money into a cup, or grain into malt; or annexing it to and making it a part of some other thing, which is the principal; or changing its nature from personal to real property; as where it is worked into a dwelling house.”
In the present casej the nature and species of the commodity was entirely changed andTts identity destroyed; as effectually, it seems to me, as by “ making wine, oil or bread, out of another’s- grapes, olives or wheat.” I think, the circuit judge erred in nonsuiting the plaintiffs, and that they are entitled to a new trial.
New trial gran ted.(a)

 According to the Institutes, if the new product can be reduced to its former rude materials, the title remains in the owner of the materials; but otherwise, if the product cannot be thus reduced. An example of the former is, where a, cup is made out of another’s gold; and of the latter, where wine is made out of another’s grapes. (Inst. lib. 2, tit. 1, § 25; Cooper’s Just. 75; Wood’s Inst. Civ. Law, 92.) The principle upon which this doctrine rests has been the subject of much discussion among commentators, some of whom have not hesitated to pronounce it too subtle for practical use; while others have admitted it, with certain qualifications. (1 Bell’s Comm. 276, note (1).) The rule as laid down by Valin and Basnage, requires the thing to be restored, if there be clear evidence of identity, what» ever change the form of it may have undergone; and they instance the cases of brown sugar converted into white, shins into leather, and com into jlour. (Id.} and see 2 Kent’s Comm. 364, note (6).)
These disputes among civilians have usually related to thd gbnbral doctrine of title by accession and the foundation upon which it rests, irrespective of the question whether the party who made' the accession did so innocently, or with *428 knowledge that he was violating another's rights. In the latter case, according to the Roman law, he acquired no title, however groat the change wrought in the original materials. {Dig.- lib. X. tit. 4, leg. 12, § 3.) “ Hence,” says Puffendorf, “ if a man, out of wilful and designed fraiid,. puts a new shape on my matter, that he may by this means rob me of it, he neither gains any right overthe matter by this act, nor can demand of me a reward for his labor, any more than a thief who digs through my walls can desire to be paid for his great trouble in making a new door into my house; or than one can desire a fee, who breaks an imposthume, otherwise incurable, with a blow that he designed for my death ; or than Autolycus could have asked a price for painting the horses which he first stole. And all this doth not proceed from any positive constitutions, but from the very dictate and appointment of natural reason, though nature doth not determine any particular penalty in the case. For to have exercised such a villany gratis, is not properly a punishment: And, on the other hand, ’tis most just and reasonable that I should not be obliged to pay a man wages for endeavoring to do me a mischief.” (Puff. B. 4, ch. 7, § 10 ; and 'see Grotius On War and Peace, B. 2, ch. 8, § 20, note 1.) In Wood’s Institutes, the doctrine on this subject is stated thus: “He that made the new species shall be master of the whole, if it cannot be reduced to its first state and condition; as when one shall press wine from your grapes, or build a ship from your timber, you cannot claim the wine or the ship &c. But this determination only takes place in favor of the workman, where the work was designed for his own use, and where he erroneously and by mistake thought the matter was his own. For if it was intended for the use of any other, it is his upon the same terms for whose use it was working: and if it is known that the grapes and timber are another's,' and yet thereof he proceeds to make his wine or ship, he shall lose his labor and workmanship: the whole shall accrue to the owner, and an action may be maintained against him.” I Wood’s Inst. Civ. Law, 92; see also 1 Bell’s Comm. 277, and note (2).)
Whether the English courts have ever expressly repudiated the above distinction between cases of innocent and fraudulent accession, does" not appear. Blackstone states the general doctrine, and acknowledges that it was borrowed from the Roman law, but throws no light upon this particular question. (2 Bl. Comm. 404, 5.) The case in the Year Books, (5 Hen. 7, fol. 15,) quoted by Viner, Brooke, &c., was trespass for taking boots and shoes. The defendant pleaded that he was possessed of a certain quantity of leather, which he bailed to one X S., who gave it to the plaintiff, and that he made thereof boots and shoes, which the defendant retook, as he lawfully might. The plaintiff contended that the plea was bad, because, by making the leather into boots and shoes, the property was changed. But the court held otherwise; and rendered judgment for the defendant. There is nothing in the decision itself, therefore, whatever may be thought of some of the reasoning of the judges, which goes to establish that title may be acquired by fraudulent accession. And Chancellor Kent says, “ The English law will not allow one man to gain title to the property of another upon the principle of accession, if he took the other’s property wilfully as a trespasser. (2 Kents Comm. 362, 3.)
The decisions in this state have not always proceeded upon considerations relating *429 exclusively io the degree of change wrought in the original material; but have sometimes been influenced, it seems, by the character of the accession in other respects, as whether fraudulent or not. The earliest case which I have found in our reports is that of Betts v. Lee, (5 Johns. Rep. 348,) where trees had been tortiously cut and manufactured into shingles. The court held that no property was acquired by the conversion; and they referred to the above distinction of the civil law as a wise provision for the discouragement of trespassers. A similar decision was soon afterwards made in Curtis v. Groat, (6 Johns. Rep. 169,) where trees had been cut and converted into coal; thus presenting the case of an entire change both in the form and nature of the original materials. The court, however, did not regard the degree of change as decisive, but thought it enough, for the purpose of maintaining the title of the original owner, that the identity of the former material was ascertained or admitted. It was added: “ The case comes within the decision of Betts v. Lee, (5 Johns. 348:) And the principle mentioned in that case, that a wilful trespasser cannot acquire title to property, merely by changing it from one species into another, applies to this case.” (See also Baker v. Wheeler, 8 Wend. 505,508,per Savage Ch. J.; Chandler v. Edson, 9 Johns. Rep. 362; Brown v. Sax, 7 Cowen’s Rep. 95, 97.)