By the Court. Duer, J.
We think, as we intimated upon *619 the hearing, that the referee was entirely right, in deciding that the plaintiffs had failed to prove their title to any portion of the flour which they replevied. Then1 counsel judiciously limited their claim to the forty-six barrels, which he wished us to consider as the residue of the five hundred barrels originally sold or mortgaged; but the five hundred barrels were themselves parcel of a larger quantity, and they had not been so selected and separated as to enable the plaintiffs to identify any portion of them as their property. Rapalye v. Mackie, 6 Cow. 250, fortified as it is by the prior decisions which are there referred to, is, on this point, a conclusive authority. The defendant was therefore entitled to judgment, and the only question is whether the amount which he ought to recover, has been justly computed by the referee.
Instead of asking for a return of the property replevied, the defendant elected to take judgment for its value. The section of the statute (2 R. S. 531, § 55,) which gives this election, is silent as to the damages; but the understanding of the profession undoubtedly is, that whether the judgment be for a return of the goods, or for their value, the right to damages equally attaches. We are satisfied, upon consideration, that this construction may reasonably be given to the general words in the preceding 53d section; and it appears to be sanctioned by the opinion of Ch. J. Nelson, in Snow v. Roys, (22 Wend. 604.) It is indeed evident, that in whichever form the judgment is entered, damages are in most cases necessary to be given, in order to complete the indemnity to which the defendant is entitled. In the present case, the referee has allowed damages in addition to the value of the property; and neither party complains that he has done so, yet both, although upon very different grounds, insist that he has erred in computing the amount for which judgment ought to be rendered. He has assessed the value according to the market price of flour at the time the defendant made his election, and has allowed, as damages, interest upon the sum thus ascertained from the time of the replevy. The counsel for the plaintiffs, however, contends that the value ought to be computed by a reference to the market price of the flour when replevied; and the counsel for the defendant, that the value is properly stated, *620 but that in the estimate of damages, the difference between that value and the highest sum for which the flour could have been sold, at any time, after the replevying and before the defendant’s election, should have been included. Much ingenuity and learning have been displayed by the counsel in support of their respective views, and it is an act of justice to say, that the court has been materially aided by their labors and researches.
The argument involves a general question which in the first instance we shall endeavor to solve; and shall then inquire whether the solution which we adopt is consistent with the adjudged cases and with the provisions of the statute.
The general question which we deem it necessary to examine is, what is the proper measure of damages, “ The rule for ascertaining the sum which the injured party ought to recover, in all cases, where personal property is wrongfully taken or detained, whether by force, by fraud, or by process of law.” It is a question of wide extent and corresponding interest, and we are not without the hope, that the observations which we intend to make may have some tendency to redeem this branch of the law from its present state of confusion and uncertainty. Unless we are greatly mistaken, there are certain indisputable rules, or more correctly, principles of natural justice, by the application of which the amount that the injured party ought to recover, may, in all cases, be readily and certainly determined. Setting aside the exceptional cases in which exemplary damages maybe justly claimed and given, and confining ourselves to those in which the remedy sought is simply pecuniary, the principles which, as it seems to us, are manifestly just, and universal in their application, are, that the owner, to whom compensation is due, must be fully indemnified, and that the wrongdoer must not be permitted to derive any benefit or advantage whatever from his wrongful act. It may frequently happen, that these principles, when applied, will coincide in the result; but there are many cases in which it will be seen that the application of both is necessary. An indemnity must always be given to the injured party; but it is not, in all cases, the measme of the damages which the wrongdoer ought to pay.
First, the injured party must be indemnified, he must be *621 placed in the same situation in which he would have been, had the wrong not been committed, or had it been instantly repaired by the payment of the compensation then due. As the actual loss to the owner is the same, whatever may be the form of the action in which its reparation is sought, the sum due to him for its compensation must be the same, whether he is the plaintiff in trespass or trover, or the defendant in replevin. There can be no variance in the amount of an indemnity, and if its criterion can be fixed, any departure from the standard which it establishes must be capricious and arbitrary, and must involve more or less of injustice to one or other of the parties to the injury.
Then what are the rules ? What the process of computation by which the just amount of the indemnity claimed may be ascertained? We reply, with some confidence, that it will be ascertained in all cases, by adding to the val/ue of the property when the owner is dispossessed, the damages which he is proved to home sustained, from, the loss of its possession. It is when the property is wrongfully taken or detained, that a right of action accrues to the owner. He is then entitled to demand a compensation for his loss, and if his demand is then complied with, it is plain that the value of the property at that time, by which we mean its market value, the sum for which it could then be sold, would constitute, at least, a portion of the amount that the wrongdoer would be bound to pay. This sum may, therefore, be fairly considered as a debt then due, and, consequently, interest, until the time of trial or judgment, must in all cases be added to complete the indemnity. It is not, however, in all cases that the value of the property when the owner is dispossessed is to be determined by a reference to its market price, nor in all that the damages, ivhick are to be added to the value, are to be limited to the mere allowance of interest. In most cases, the market value of the property is the best criterion of its value to the owner, but in some its value to the owner may greatly exceed the sum that any purchaser would be willing to pay. The value to the owner may be enhanced by personal or family considerations, as in the case of family pictures, plate, &c., and we do not doubt that the “ pretium affectionis,” instead of the market price, ought *622 then to be considered by the jury or court, in estimating the value. In these cases, however, it is evident, that no fixed rule to govern the estimate of value, can be laid down, but it must of necessity be left to the sound discretion of a jury, in the exercise of a reasonable sympathy with the feelings of the owner. When the market price is justly assumed as the measure of value, there are numerous cases in which the addition of interest would fail to compensate the owner for his actual loss. It may be shown that had he retained the possession, he would have derived a larger profit from the use of the property than the interest upon its value; or that he had contracted to sell it to a solvent purchaser at an advance upon the market price; or that when wrongfully taken or converted, it was in the course of transportation to a profitable market, where it would certainly have arrived; and in each of these cases the difference between the market value when the right of action accrued, and the advance, which the owner, had he retained the possession, would have realized, ought plainly to be allowed as compensatory damages, and as such to be included in the amount for which judgment is rendered. So where it appears that the owner in all probability would have retained the possession of the property until the time of trial or judgment, and that it is then of greater value than when he was dispossessed, the difference may fairly be considered as a part of the actual loss resulting to him from the change of possession, and should therefore be added to the original value to complete his indemnity.
The observations that have now been made are sufficient to explain our views as to the proper mode of securing an indemniinj to the injured party; but the amount of the judgment that ought to be rendered in his favor, even when no exemplary damages are claimed, as we have already stated, is not necessarily to be limited to an indemnity. In many cases, it may not be right that the wrongdoer should be subjected to cumulative damages as a penalty for his misconduct; but it is clear, that he ought never to be permitted to derive an actual benefit from his wrongful act, a gain which is the fruit of his own injustice. He must in all cases, be compelled to refund. Hence he must, in all cases, be liable to the extent of the value of the property when taken or *623 converted, together with interest, even when the amount may greatly exceed the sum that would be sufficient to indemnify the owner. If goods uninsured should by force or fraud be removed from a warehouse, which, immediately thereafter, is consumed by fire, as they must have perished had they remained, it is certain that the owner sustains no loss from the removal; yet none can suppose, that, in an action against the wrongdoer, the fact could be given in evidence to bar a recovery, or that the recovery could be for a less sum than the value of the goods when removed. Here, although the judgment in its whole amount is a positive gain to the owner, yet it imposes no penalty in the form of exemplary damages upon the wrongdoer. It merely compels him to pay for that which he had no right to appropriate, and thus prevents him from deriving any benefit from his wrongful act. So, reversing some of the cases that have been stated, if the goods when wrongfully taken or converted, were in the course of transportation to a losing market, or were contracted to be sold at a less price than their market value, the owner would be fully indemnified by giving him the sum with interest which he would have realized had he retained the possession, yet it cannot be doubted, that the market value when the right of action accrued, with interest from that time, should continue to be the measure of damages.
The present case affords another illustration of the same truth, that, even when vindictive damages are not claimed, those which are given in many cases, may and ought to exceed a mere indemnity. Had the defendant retained the possession of the flour, which was replevied, it is morally certain that it would have been sold by him, under the execution in his hands, at the same time, and at the same price, as the residue of the flour upon which he had levied.' Hence we should give to him, or more properly to the judgment creditor whom he represents, a full compensation for the actual loss, by assessing the value of the flour in controversy, at the price for which it would have been sold, had it not been replevied, and by allowing, as damages, interest upon that amount from the time the sale would have been made ; nor could any objection be made to a judgment founded upon this basis, except that it would leave to the *624 plaintiffs the difference between the value of the flora when replevied, and its value at the time of the sale under the execution, as a profit resulting from their wrongful act.
Even where the market value of the property, when the right of action accrued, would more than suffice to indemnify the owner, it is not, in all cases, that the liability of the wrongdoer should be limited to that amount. It is for the value that he has himself realized, or might realize, that he is bound to account, and for which judgment should be rendered against him. Hence should it appear in evidence upon the trial, that he had in fact obtained upon a sale of the property a larger price than its value when he acquired the possession, or that he still retained the possession, and that an advance price could then be obtained, in each case the increase upon the original value, (which otherwise would remain as a profit in his hands,) ought to be allowed as cumulative damages.
We think it follows, from the observations that have been made, and the illustrations that have been given, that the principles which we have stated as those which ought to determine the amount of the judgment, will be carried into effect in all cases by adding to the value of the property when the' right of action accrued such damages as shall cover, not only every additional loss which the owner has sustained, but every increase of value which the wrongdoer has obtained, or has it in his power to obtain; and we are satisfied, after much consideration, that there is no other mode of computation by which as a universal and invariable rule the same result can be attained.
It seems to us exceedingly clear, that the highest price for which the property could have been sold at any time after the right of action accrued, and before the entry of judgment, cannot, except in special cases, be justly considered as the measure of damages. When the evidence justifies the conclusion that a higher price would have been obtained by the owner had he kept the possession, or has been obtained by the wrong-doer, we have admitted, and shown that it ought to be included in the estimate of damages; in the first case, as a portion of the indemnity to which the owner is entitled, and in the second, as *625 a profit which the wrongdoer cannot be permitted to retain; but we cannot admit that the same rule is to be followed where nothing more is shown than a bare possibility that the highest price would have been realized, and still less where it is proved that it would not have been obtained by the owner, and has not been obtained by the wrongdoer. Its allowance in these cases would in truth impose a penalty upon the wrongdoer and render the damages vindictive, instead of remunerative ; and it must be remembered that we are treating exclusively of the cases in which vindictive damages are not claimed, or if claimed, ought not to be given.
The calculation of damages according to the value of the property at the time the amount of the judgment is to be settled, is liable to similar objections. As a rule, it is susceptible only of a very partial application. For the reasons that have already been given, it is applicable only where it appears, that the possession would have been retained by the owner, or has been retained by the wrongdoer; or should it be thought that its application may be extended beyond these cases, upon the ground that the wrongdoer is hound to retain the possession so as to enable him to return the property when lawfully demanded by the owner, it must still he restricted to the cases in which the property continues to exist, and has advanced in value. Without this restriction, the application of the rule would lead to palpable injustice, since if we are to hold that it is to be applied in all cases as the true and only measure of the indemnity to which the owner is entitled, it casts upon him the whole risk of the destruction or deterioration of the property, when proceeding from inevitable accident without any negligence or fault imputable to the wrongdoer. Hence, if the goods wrongfully taken or converted are perishable in their own nature, and at the time of trial from an inherent vice have wholly lost their value, the jury are to be instructed that nominal damages only can be given. Indeed, the learned counsel for the defendant candidly admitted, that the consequences which have been stated would follow, when the defendant in replevin elects to take a judgment for the value of the property, instead of its return, if the word “ value” as used in the statute must be construed to refer *626 exclusively to the value of the property when the election is made. But that these consequences were contemplated by the revisers, or by the legislature, we find it impossible to believe.
We are next to inquire, whether the principles which we have laid down as properly regulating and fixing the amount of a recovery, in all the cases which this discussion embraces, are consistent with, or dedncible from the adjudged eases in England and in the United States. That they are explicitly stated in any reported case, we shall not venture to affirm; but that they are implied in many, and are consistent with the judgment actually rendered in most of the cases, we are fully convinced. There is, we confess, a considerable want of harmony in the decisions, nor shall we deny that there are some -which must be rejected as wholly anomalous, if the law is ever to be settled in conformity to the views which we have expressed; but it is when the law has been rendered uncertain by the conflict of decisions, that it becomes emphatically the duty of judges to recur to those first principles of justice which lie at the foundation of positive law, and by the application of which its existing uncertainty may, generally speaking, be effectually removed. The law, (in the beautiful language of Lord Mansfield,) “ works itself pure” by the fresh streams which it draws from its original fountains of equity and reason.
In trover, the general rule, both in England and in the United States, undoubtedly is, that the current or market value of property at the time of the conversion, with interest from that time until the trial, is the true measure of damages. (Amery v. Delamere, 1 Strange 505; Fisher v. Prince, 3 Burr. 136; Finch v. Blount, 7 Car. & P. 478; Cooke v. Hartle, 8 Car. & P. 568; Mercer v. Jones, 3 Camp. 476; Shotwell v. Wendover, 1 J. R. 65; Wilson v. Conine, 2 Ibid. 280; Kennedy v. Strong, 14 J. R. 128; Hallett v. Novion, Ibid. 273; Dillenbach v. Jerome, 7 Cow. 294; Baker v. Wheeler, 8 Wend. 505; Stevens v. Son, 2 Hill 132; Watt v. Potter, 2 Mason 76; Kennedy v. Whitmore, 4 Pick. 466; Sargent v. Franklin Ins. Co., 8 Pick. 90; Johnson v. Sumner, 1 Met. 172; Barry v. Bennett, 7 Ibid. 354; White v. Webb, 15 Conn. 502; Jacobs v. Laussat, 6 Sergt. & Rawle, 350; Lillard v. Whitaker, 3 Bibb, 92; Sproule v. Tor, 3 Litt. 25.) *627 It may be inferred from the cases, that it is only of late years, that interest after the conversion has been allowed in England, and that its allowance now depends upon the terms of the statute 3 & 4 William IV. c. 42, § 29, and rests in a great measure in the discretion of the jury; but with us, interest is justly regarded as a constituent part of the indemnity to which the plaintiff is entitled, and which it is the duty of the court, .and of the jury under the direction of the court, to allow, although the value of the property, with interest, is the usual; wTe can by no means admit, as has been intimated in some of the cases in this state and in Massachusetts, that it is the sole and invariable, measure of damages. In England, the law may be considered as settled, that additional damages, if laid in the declaration, and directly resulting from the wrongful act of the defendant, are recoverable. (Davis v. Oswell, 7 Car. & P. 804; Bodley v. Reynolds, 8 Queen’s Bench R. 779; Rogers v. Spence, 15 Law Journal, N. S. 52.) And an early decision to the same effect, is found in our own reports. (Shotwell v. Wendover, 2 J. R. 65.) It is true, that in Brizee v. Maybee, (21 Wend. 144,) Mr. J. Cowen, spealdng as the organ of the court, seems to have held that under no circumstances ought the jury to be permitted to find special damages in the action of trover; and the supreme court of Pennsylvania, seems to have given its sanction to the same doctrine, (Farmers' Bank v. Mackie, 2 Penn. State R. 318;) but as this doctrine, literally understood, in effect denies the right of the plaintiff to a full indemnity, however certain the evidence of his loss, the language of the learned judges ought perhaps to be construed as only meaning special damages ought never to be allowed, where, from the nature of the case, the estimate must be uncertain and conjectural; and the doctrine thus explained and limited, we are far from wishing to controvert. On the contrary, the position that when exemplary damages cannot justly be claimed, those which are purely hypothetical and speculative ought not to be given, commands our entire assent; for this is only saying, that when an indemnity is sought, the existence and amount of the loss must first be proved.
Even where no special damages are laid in the declaration, the market value of the property at. the time of its conversion is *628 not to be regarded, in all cases, as the exclusive measure of damages. When it has appeared, in evidence, that the article of goods in controversy had been actually sold by the defendant, the plaintiff, although he is certainly not bound by the price thus obtained, may yet elect to consider it as evidence of the value, and the jury may in their discretion found their verdict upon this estimate, adding interest from the time of the sale. (Finch v. Blount, 7 Carr. & P. 478; Whitehouse v. Atkinson, 3 Carr. & P. 347; Selleck v. Smith, 3 Bing. 602.) It must be admitted, that in the English cases to which we have referred, the question whether the proceeds of the sale should be regarded as the value of the property, appears to have been submitted to the determination of the jury, as resting wholly in their discretion. But although we cannot find that this exact question has been decided, yet with us we consider the law as settled, and properly and wisely settled, that the quantum of damages, with the exception of cases in which exemplary or vindictive damages may properly be given, is strictly a question of law, so that the jury, in making the estimate, are bound by the rule which the j udge directs them to follow. (Savage, Ch. J., in Baker v. Wheeler, 8 Wend. 505.) Damages which may be estimated by a certain rule founded upon principles of justice, ought never to be treated as discretionary ; and no rule is more manifestly just, than that which compels a person who has sold the property of another, to account to the owner for all the moneys which he has received; which l precludes him, in other words, from deriving a benefit from hisV own wrong.
It is evident, from this review of the cases, that so far as the decisions have gone, the rules that control the estimate of damages in trover, correspond entirely with those which we have endeavored to show ought upon principle to be followed.
It has, however, been insisted by the counsel for the defendant, that there is a class of cases in England, and in this state, which fully bears out the assertion, that the true measure of damages in trover, is not the market value of the property at the time of its conversion, but its highest value at any time between its conversion and the trial, and we entirely agree with the counsel, that if this is a just criterion of the damages which the *629 dispossessed owner is entitled to recover, we are bound to apply it in the action of replevin as well as of trover. There is no distinction arising from a difference in the form of the action, that ought to affect the substance of the relief.
Our objections to considering an intermediate higher value as an invariable rule of damages, have already been stated, and need not be repeated. It is perfectly just, when the enhanced price has been realized by the wrongdoer, or it is reasonable to believe would have been realized by the owner, had he retained the possession; but, in all other cases, damages founded upon such an estimate, are either purely speculative, or plainly vindictive. They are conjectural and speculative, when it is barely possible that the owner, had he retained the possession, would have derived a benefit from the higher value. They are vindictive, when it is certain that no such benefit could have resulted to him. It is however proper, and perhaps necessary, to examine the cases that have been cited and relied on, since the construction which has been given them by the defendant’s counsel is by no means novel, nor unsupported by authority. It will appear, we think, that the true import of the English decisions has been greatly -misunderstood, and that they by no means justify the conclusions which have been drawn from them.
The cases in England are Fisher v. Prince, 3 Burr. 1363; Whitten v. Fuller, 2 Black. R. 902; Shepherd v. Johnson, 2 East. 211; McArthur v. Seaforth, 2 Taunt. 257; Harrison v. Harrison, 1 Carr. & P. 412; Greering v. Wilkinson, 1 Carr. & P. 625; and then in our own reports, West v. Wentworth, 3 Cowen, 82, and Clark v. Pinney, 7 ibid. 681.
Fisher v. Prince and Whitten v. Fuller were both actions of trover, and they have been referred to by the learned judge who delivered the opinion of our supreme court in West v. Wentworth and in Clark v. Pinney, as establishing, that in trover, where the chattel is not of a fixed or determinate value, the damages are not, in all cases, confined to the worth of the article at the time of its conversion, but may be enhanced according to its increased value subsequent to that time. (7 Cow. 694; 3 ibid. 83, per Sutherland, J.) We admit the fair *630 interpretation of this language is, that the increased value of the chattel, in all cases when a subsequent increase is proved, is the proper measure of damages, and, consequently, that it goes the whole length of the doctrine which we have been urged to adopt; but, after a diligent examination of the cases of Fisher v. Prince and Whitten v. Fuller, we are constrained to say, that so far from having established Tie doctrine, they do not even allude to, or, by any possible implication, direct or remote, suppose its existence. In each of those cases, an application was made to the court, upon the part of the defendant, to stay the proceedings upon the payment of the costs and the delivery to the plaintiff of the articles mentioned in the declaration, and in each the application was denied, not however upon the ground that the articles were then of greater value than at the time of their conversion, for their enhanced value, it is plain, would have been a reason, not for denying, but granting the application, nor upon the ground that, at some intermediate time, they have borne a highei* value which the plaintiff was entitled to recover, for no such fact appeared, or was alleged to exist; but, in each case, the denial was upon the ground of the uncertainty whether the restoration of the articles in the state in which they were would compensate the plaintiff for his actual loss; in other words, and more ¡jroperly, whether the value of the articles at that time was equivalent to the damages, which the plaintiff might justly claim to recover. In Whitten v. Fuller the action was for a bond of £400, and the ajjplication of the defendant was resisted upon the ground that the plaintiff had sustained great loss by the detention of the bond, and their counsel stated the rule to be, that when the value is uncertain, (i. e. uncertain when the application is made,) or a tort is alleged, for which a jury may assess damages, the court will not permit such a delivery as may evade the plaintiff’s remedy; and to this the court, in denying the application, plainly assented by saying, that they could not stay the proceedings, if the plaintiff insisted upon going for special damages.
In Fisher v. Prince, the reporter states that the application was denied upon the particular circumstances of the case, such as the complicated quantity of the goods demanded, and the uncertainty *631 of thei/r remwmi/ng of the same value as they were when taken, and Lord. Mansfield closed his opinion by stating, as a conclusive reason for rejecting the application, that the goods were altered and their value ehanged, evidently meaning changed, not by its increase but its diminution. It is the opinion, however, of Lord Mansfield in this case, which has doubtless led to the supposition that an intermediate value may be assumed as the measure of damages, and hence some further observations, explanatory of its .import, seem to be necessary. As we understand the opinion, his lordship does not say nor intimate 46 that the damages in trover for a chattel may be enhanced according to its increased value at any time subsequent to its conversion, and that it is • only when the value is fixed and determined, that the damages will be confined to its worth at the time of its conversionbut he does say, that it is only when a specific chattel is demanded and there are no circumstances to enhance the damages above its beal value, but its real and ascertained value must be the sole measure of damages, that the court will stay the proceedings upon its being brought into court to be delivered to the plaintiff. And he adds, that when there is an uncertainty as to the quantity or quality of the thing demanded, or there is any tort accompanying it that may enhance the damages above the real value, and there is no rule whereby to estimate the additional value, then it shall not be brought into court. The ambiguous words, il additional value,” are the probable source of the error" into which judges and text-writers have fallen in construing this decision; but assuredly Lord Mansfield never meant to say that any addition could be made to the real value of the chattel demanded, the price for which it might be sold, by the damages to be given for an accompanying tort. His meaning plainly is, that in such a case it is impossible for the court to say what damages ought to be allowed in addition to the value which the plaintiff is in all cases entitled to recover. The expression, “ additional value,” may be inaccurate, but taken in connection with those which precede it, is hot at all equivocal; it means 16additional damages.”
There is a modern case upon the subject, not cited upon the argument, which throws much light upon the decisions in Fisher *632 v. Prince, and Whitten v. Fuller, and corresponds with the interpretation which we have given them, viz. Tucker v. Wright, (3 Bingham 601.) The application was to stay the proceedings in an action of trover-, upon the delivery to the plaintiff of certain parcels of cloth, (a portion of a larger quantity for which the suit was "brought,) and upon payment of the value of certain other parcels which the defendant had disposed of, and it was denied, upon the ground that the court or its officers could not act as a jury in assessing the value, and that the property had been a long time in the defendant’s hands and might have been materially imgured. In conclusion, the positions which Fisher v. Prince, Whitten v. Fuller, and other similar cases establish, are these, and these only: That the plaintiff in trover, in all cases where the action is maintainable, is entitled to recover the value of the property at the time of the conversion, and may be entitled to special damages in addition; and consequently that it is only when the property certainly retains its original value, and no special damages are claimed, that the court will order the proceedings to be stayed upon the delivery of the property to the plaintiff and the payment of costs, for the plain reason, that it is only in such cases that the restoration of the property and the payment of costs amount to a fall indemnity. This class of cases, therefore, gives no countenance or color to the assertion that a higher intermediate value can be treated as the measure of damages, when there is no evidence that it had been realized by the defendant, or would have been realized by the plaintiff. They prove, indeed, that additional damages may be recovered, but contain no allusion to the possible recovery of an additional vcdue.
There is another class of cases, however, the next to which we shall refer, which with some appearance of reason has been relied on in support of the doctrine. Shepherd v. Johnson, McArthur v. Seaforth, and Harrison v. Harrison, belong to this class. The action in each of these cases was debt, not trover, and in each the question decided arose upon the assessment of damages for the breach of the condition of a bond. We lay no stress, however, upon this distinction, but admit that if the rule which was followed in estimating the damages was *633 correct and just in itself, no difference in the form of the action should he allowed to prevent its application. The rule was adopted as a rule of indemnity, and when the right to an indemnity exists, its measure cannot reasonably be made to depend upon the form of the remedy.
The bond in these cases was conditioned to replace upon or before a given day, a certain amount of government stock, lent by the plaintiff to the defendant. The stock was not replaced, and it was held, that in estimating the damages, the plaintiff was not limited to the market value of the stock at the day upon which it ought to have been replaced, but might justly claim the higher price which it bore at the day of trial; but in neither of these cases was it suggested or intimated by the court, that the plaintiff could recover the highest price which the stock had borne, at any day during the interval between the breach of the contract and the trial; and in truth this position would have been inconsistent with the grounds upon which the actual decision was placed. Such a claim was indeed advanced by the counsel for the plaintiff, in McArthur v. Seaforth, in his opening argument, but it was explicitly abandoned in his reply, and was passed over without notice by the court, in giving its judgment.
We do not at all doubt, that w'here the contract is for replacing stock previously lent, the plaintiff, when its breach is admitted or proved, may elect to claim the market price of the stock at the day of trial, as the just measure of his damages, and when the true grounds of the decision we are now considering shall be stated, it will be seen that they are entirely consistent with the views which we have already expressed. These grounds were, first, that as chancery may decree the specific execution of a contract for replacing stock, and the defendant, when such a decree is made, to enable himself to perform it, must of necessity purchase the stock at its then market price, he can have no right to complain when he is compelled to pay the same sum as damages by the judgment of a court of law; and second, that as stock is usually held not for sale, but as a permanent investment, it is a reasonable presumption, that had it not been replaced at the stipulated time, the plaintiff would have retained its posses *634 sion until the clay of trial; and hence its price at that time, whatever it might he, is no more than an indemnity. When it is withheld, he is not placed in the situation in which he would have been had the contract not "been broken. The first of these reasons is given by that eminent judge, Lawrence, J., in Shepherd v. Johnson; and in Harrison v. Harrison, Best, Ch. J., says, “ Justice is not done, if you do not place the plaintiff in the same situation in which he would have been had the stock been replaced at the stipulated time,” meaning that he would then have continued to he the owner of the stock; and that such was his meaning is rendered certain by his adding, “ we cannot act upon the possibility of his not keeping it,” which is in effect saying, that the presumption of his continued possession could be repelled only by evidence, and not by conjecture, and necessarily implies, that when the presumption is properly repelled, the same damages could not justly be given. It is obvious to remark, that the reasons which have now been stated are not at all applicable, where the contract is not for the delivery of stock, but of merchantable goods-, which the vendor has purchased, not for his own use or consumption, but with a view to profit upon a resale. A decree for the specific execution of such a contract, commanding the defendant to deliver to the plaintiff a certain number of barrels of salt or flour, would he a novelty in jurisprudence ; and it is so far from being probable that the plaintiff, had the goods been delivered at the stipulated time, would have kept the possession until the day of trial, that the presumption is directly the reverse; especially when we remember that frequently, we fear we may add usually, years intervene between the breach of the contract and the rendition of a judgment. We cannot dismiss this class of cases, without calling attention to an observation having an important hearing upon the whole inquiry, which the decision in McArthur v. Seaforth forcibly suggests. In this case, had the stock been replaced at the stipulated time, the plaintiff might have availed himself of an option given by the government, of exchanging it for stock of a different description, which, on the day of trial, was of higher value than the other stock agreed to be replaced, and he claimed the difference as a special damage, a necessary compensation for the loss of the *635 advantage he might have gained. But the court rejected the claim, principally upon the ground that it was not at all probable from the evidence, that the plaintiff would, in fact, have made the exchange which the government allowed. This is an express decision that hypothetical damages, damages which are- meant to compensate not an actual or probable, but a merely possible loss, are not recoverable.
The last of the English cases, and the only one that bears the resemblance of a direct authority, is Greening v. Wilkinson. It is, however, only a nisi prius decision, and the report is not only brief, but we apprehend imperfect; material facts seem to be omitted, nor is it stated what was the verdict finally rendered. The action was trover for East India Company’s warrants for cotton, and evidence was given that cotton was worth six pence per pound when its delivery was demanded, and was worth 101 pence at the day of trial. The counsel for the plaintiff contended, relying upon the stock cases, that the price at the time of the verdict was the true measure of damages, while the counsel for the defendant urged the authority of Lord Ellenborough’s decision in Mercer v. Jones, (1 Camp. 479,) as proving that damages could not exceed the value of the property at the time of its conversion. Abbott, Ch. J., (Lord Tenterden,) is reported to have said that Mercer v. Jones was hardly law, and that in his opinion, “ the price of the article on the day of conversion, is by no means the criterion of the damageswhich it certainly is not, where special damages in addition are proved; but the learned judge further said, “ that the amount of damages is for the jury who may give the value at the time of the conversion, or at crny subseguent time, in their discretion, because the plaintiff might have had a good opportunity of selling the goods, if they had not been detained.”
Now as it is not stated that there was any evidence that the cotton had borne a higher price at any intermediate time than on the day of trial, and the claim of the counsel of the plaintiff was limited to the price on that day, these remarks seem to have been wholly irrelevant; but admitting them to have been rendered pertinent by evidence not stated by the reporter, they are susceptible of an interpretation entirely consistent with our own *636 views, since the learned judge may only have meant to say, that if the jury were satisfied from the evidence that the plaintiff would have availed himself of the opportunity of selling the goods had they not been detained, they might allow as damages the highest price he would then have obtained. Yét even with this explanation, we cannot assent to the propriety of a direction, which seems to have left the amount of damages claimed as an indemnity, to the absolute discretion of the jury. Where damages are justly claimed as an indemnity, and the facts upon which the claim is rested are proved, the verdict of a jury refusing to allow them, with us would be set aside as contrary to law.
It appears then, from this review of the English cases, that there is no evidence that in a single case an intermediate higher value not maintained to the day of trial has been adopted as the measure of damages, and that in McArthur v. Seaforth, the single case in which such a claim appears to have been made, it was so plainly discountenanced by the judges, that it was finally abandoned by the counsel.
It is said, however, that whatever may be the case in England, or in other states of the union, the law in this state is settled that in an action upon a contract for the sale and delivery of goods, upon a stipulated day, if the consideration money has been paid in advance, and the plaintiff proves his case, he is not limited in the measure of damages to the value of the goods on the day when they should have been delivered, but is entitled to recover the highest price for which they could have been sold at any time between the breach of the contract and the day of trial; and it has been strongly insisted, that the principle upon which the decision has been made is applicable to all cases where the property, which is the subject of controversy, has been 'wrongfully taken or detained, nor shall we deny that this analogy exists. We shall not deny that an owner who has been unjustly deprived of the possession of his goods zis entitled to as full an indemnity as a purchaser.
The decisions of the supreme court in West v. Wentworth, and in Clark v. Pinney, have been confidently appealed to, as having sanctioned the doctrine in question, and it must be *637 admitted, that such appears to he their necessary construction. It is the construction which has been given to them by text writers, (Sedgwick upon Damages, 265; Story on Contracts, 2d ed. p. 722, § 846,) and it corresponds, we believe, with the general understanding of the profession. But we cannot admit that these decisions are alone sufficient to establish the doctrine, if not otherwise sustained, by argument and by the authorities, nor can we think, that we are bound to follow it implicitly without any inquiry into its grounds and reasons. If there are any rules in the law of damages that may be regarded as fixed and invariable, they are, that neither exemplary damages, nor such as are remote and consequential, or purely speculative, are recoverable in an action founded upon the breach of an executory contract, but that the remedy of the plaintiff, in all such cases, is limited to a just compensation for his actual loss. He is entitled to an indemnity and nothing more; and, consequently, is never to be placed in a better situation than that in which he would have been, had the contract been fulfilled. (Sedgwick on Damages, 27, 28, 206.) And yet, in many cases, this must be the necessary consequence, if under a contract for the delivery of goods, upon a future day, their highest intermediate value is to be invariably adopted as the measure of damages, and such, we add, seems really to have been the effect of the application of this rule both in West v. Wentworth and in Clark v. Pinney.
In West v. Wentworth, there were two contracts, founded upon a consideration admitted to have been received, for the delivery of salt; the first parcel was to be delivered in June, 1820, and the second in -October, in the same year, and the cause was tried in July, 1823. In Clark v. Pinney the contract also related to salt, which was agreed to be delivered on the 15th April, 1821, and the cause was tried in May, 1825. In each case it was proved, that the maximum price of salt, in the interval between the time fixed for its delivery and the day of trial, was in the autumn of 1822, and in each the judge who tried the cause, instructed the jury, that the maximum price was the measure of damages which the plaintiff was entitled to receive; and the supreme court, upon an application for a new trial, held, that the rule of damages thus adopted was correct upon prin *638 ciple and upon the authorities. It is evident, that, in these eases, the salt was not purchased for the personal use or accommodation of the vendees, but for the purpose óf sale by them; and in Clark v. Pinney, this fact is not only distinctly admitted, but is stated as a necessary ground of the decision. (7 Cow. 696.) It is probable, from the usual course of the trade, that in both cases the salt was meant to be exported upon the lakes to a western market, (id. p. 682 ;) hence had it been duly delivered under the contracts, the vendees could not have obtained the maximum price which was adopted as the measure of damages, unless they had retained the possession, in West v. Wentworth, for more than two years, and in Clark v. Pinney for more than eighteen months, after the delivery. That they would have done so, considering the motives of the purchaser, the nature of the trade, and of the article itself, was in the highest degree improbable, nor does it appear that, in either case, there was a particle of evidence to warrant the conclusion. ■ Even upon the supposition, that some evidence bearing upon this question, was given upon the trial, still, according to our views of the law, its determination should have been left ■ to the jury under the instruction that the maximum price was not to be allowed as the measure of damages, unless they were satisfied, that, had the contract been performed, it would have been realized, and, consequently, was necessary to be given as a compensation to the plaintiffs for their actual loss. The direction, however, given to the jury in each case was positive, and was, therefore, certainly erroneous, unless it is an inflexible rule of law, that, upon such contracts, the highest intermediate value is the true measure of damages, whatever may be the circumstances of the particular case; in other words, that the damages must be given, even when it is certain that no equivalent loss has been sustained. The learned judge, who, in an elaborate opinion, delivered the judgment of the court in Clark v. Pinney, distinctly admitted, that in the ordinary case of a contract for the sale and delivery of goods on a future day when the price is not to be paid until delivery, the true and only criterion of the damages is the price of the goods upon the day fixed for their delivery, but he insisted that the vendee is not confined .in *639 measuring Ms damages to the value of the goods on the day when they should have been delivered, where the price of the goods has been paid at the time of making the contract, or at any time anterior to that fixed for their delivery. (7 Coav. 687.) That the vendee is not thus confined we fully concede; but we apprehend, that it is a most illogical conclusion that the highest price of the goods, at any subsequent time before the trial, is therefore necessary to be adopted as the universal measure of damages. It is this conclusion, however, that the - supreme court seems to have adopted as self-evident, since no effort is made to demonstrate its necessity or propriety.
The reason of the distinction between the cases in which the goods purchased are to be paid for only upon delivery, and those on which the contract price is advanced, is stated to be, that, in the first case, the vendee having retained the possession of his funds might have applied them, when the contract was broken, to the purchase of other goods of the like description and quality, and thus have secured to himself the advantage of their subsequent rise in value, and consequently when he has neglected to do so the loss that he sustains must be ascribed to his own fault; Avhereas the vendee who has parted with his funds by advancing the price has disabled himself from pursuing a similar course, so that his loss of a gain, that might otherwise have been realized, may be justly considered as a direct1 consequence of the nondelivery of the goods. It is manifest, hoAvever, that this reasoning implies that had the goods been delivered the gain would have been made, and is, therefore, only applicable when this fact is established by proof, or may be justly presumed; and Ave deny that this presumption can reasonably be made when the goods are purchased for sale, and are liable to injury from the lapse of time, unless the increased value set up as the measure of damages has occurred within a short period after the time when the goods should have been delivered. It may be perfectly just, that the v-endee, who is not*to pay for the goods until the delivery, should be limited in the recovery of damages to the difference between the contract price and the market value of the goods on the day fixed for their delivery, but it by no means follows, nor, without a violation of principle and a defi *640 anee of analogy, can we say, that the vendee, who has advanced the price, is entitled to speculative damages to cover a barely possible loss, and still less, that he is entitled to damages exceeding any loss, that had the contract been complied with, he could have sustained. Whether the contract price has or has not been paid, the truth remains that the vendee, when the contract is broken, may claim an indemnity, and has no right to claim anything beyond it. The amount of the loss, and, therefore, of the damages by which it is to be compensated, may vary, but there can be no difference in the principle by which the estimate of damages ought to be governed, and this principle, we are constrained to say, in the cases of West v. Wentworth, and Clark v. Pinney, seems to have been overlooked and disregarded. It was disregarded in assuming the maximum price of the salt as the measure of damages, without any evidence to show, or any ground for presuming, that this price, had the salt been delivered under and according to the terms of the contract, would have been obtained by the plaintiffs. It was disregarded in sanctioning verdicts for damages exceeding any loss which the court or jury had any right to say the plaintiffs had sustained. The learned judge who delivered the opinion in Clark v. Pinney, was entirely successful in proving that damages exceeding the value of goods at the time they ought to have been delivered under a contract, in an action founded upon its breach, may be given, but he did not even attempt to prove that such additional damages may be given when there is no proof and no reasonable presumption of an additional loss, nor, so far as our researches have extended, are any other cases to be found that lend the slightest countenance to this novel doctrine. In addition to the cases that we have already examined, (the trover cases in Burrow and in Blackstone, and the stock cases,) the learned judge referred to some expressions of Chief Justice Marshall of very doubtful import in Shephard v. Hampton, (3 Wheaton 200,) and to the language of the court in Gainsford v. Carroll, (2 B. & Cress. 624,) which was said by a necessary implication to sanction the rule that the supreme court have followed. It does not appear, however, that this language has been so understood in England, and it is certain if such is its true *641 Interpretation, it has been rejected and overruled not by inconsistent dicta, but by an express decision.
The most recent case in the English reports is Startup v. Cortuzzee, (2 Cr., Mees. & Rosc. 165,) and it stands in direct opposition to West v. Wentworth, and Clark v. Pinney, and consequently to Gainsford v. Carroll, if the dicta of the court in that ease deserve the name of authority.
The action was assmnpsii, to recover damages for the nondelivery of a cargo of linseed pursuant to a contract of sale. The contract price was thirty shillings per quarter; the price when the vessel arrived, and the linseed ought to have been delivered, fifty shillings per quarter; at the time of the trial, it had advanced to fifty-six shillings. The plaintiff had paid in advance a moiety of the pxircliase money, and the defendant had paid this sum with interest into court, and an additional sum of £524, and his counsel insisted on the trial that the whole amount paid into court was sufficient to cover all the damages which the plaintiffs were entitled to recover; but the opposite counsel contended that as the plaintiff had paid a portion of the purchase money, they were entitled to damages according to the piice at which the seed was selling at the time of the trial. Lord Abinger, who tided the cause, told the jury that in his opinion, the plaintiffs were not entitled to treat the cause as resembling contracts for replacing stock, and were, therefore, not entitled to damages according to the price of the seed at the time of the trial, and that taking the price at the time the cax’go would have arrived had it been shijxped for delivery under the contract, it appeai'ed to him that enough had been paid into com't. The jury under this charge, being of the same opinion as to the sufficiency of the sum paid into court, found a verdict for the defendant. The counsel for the plaintiff moved for a new trial, on the ground of the misdirection of the jxxdge, and in sxxpport of the motion relied principally upon the language of the com’t in Gainsford v. Carroll, but the judges were all of opinion that the case had been left to the jury under the proper direction, the plaintiffs not being entitled to speculative damages to cover the profits which they might possibly have made had the linseed been delivered, and there being no circumstances to show that they had, in fact, *642 sustained any special damage. The application for a new trial 'was therefore denied. Ho comments upon this decision can be requisite. Its import is plain and unmistakable. It is a positive decision, that the general rule of damages applicable to contracts for the sale of goods, is not altered by the mere circumstances of a payment in advance-, and that speculative damages to cover the loss of a possible gain ought never to be allowed. It is therefore a conclusive proof that the doctrine which the supreme court is said to have established, and we are required to follow, is: not considered as l'aw in England, though it is upon English authorities that it was originally founded. Hor, so far as we have been able to discover, is the doctrine considered as law in any one of our sister states; and in many, as in Pennsylvania, (Smithurst v. Woolson, 5 Sergt. & Rawle, 106;) in Connecticut, (Wills v. Abernethy, 5 Conn. R. 222;) in Massachusetts, (Gray v. Portland Bank, 3 Mass. 356; Swift v. Barnes, 16 Pick. 194;) in Kentucky, Lasler v. Allen, 2 Bibb, 338;) and in Louisiana, (Vance v. Journe, 13 Lou. R. 225;) it has been exjfiicitly rejected. We must, therefore, adhere to the opinion that whether the action be trover or assumpsit, the highest intermediate value or price ought never to be taken as the measure of damages, unless the evidence justifies the belief, Hot that it might, but that it wotdd, have been realized by the plaintiff, had lie retained the possession of the- property, or that it has been, or might still be, realized by the defendant.
When we examine with attention the cases of West v. Wentworth and Clark v. Pinney, the source of the error, which we are forced to think that the decisions involve, is readily discovered. In each case, the counsel for the defendant insisted that where goods contracted to be sold have not been delivered, their value at the time fixed for the delivery is not merely the ordinary, but the only measure of damages. Hence the- general question, whether in any case higher damages can be given, is that to which the attention of the court was alone directed. It does not seem to have occurred to the counsel, and therefore escaped the attention of the court, that although special damages exceeding’ the original value may in many cases be justly given, yet they can be given only as an indemnity, and consequently that proof *643 of a loss commensurate with the indemnity claimed is indispensable.
We resume the inquiry, that will not much longer detain us ; whether the principles which we have stated as those which ought, in all cases, to control the estimate of damages are consistent with the adjudged cases.
In trespass de ionis asportaUs, if no exemplary damages are claimed, there seems to be an entire concurrence of the, authorities, that the general rule of damages is the same as in trover, and it is well settled, that speculative damages to cover: the loss of possible or even probable profits, ought not to be allowed. (The Apollo, 9 Wheat. 376; Pacific Ins. Co. v. Conard, 1 Bald. 138; S. C. 1 Peters 275; Brannin v. Johnson, 19 Maine, 361.)
The numerous cases in replevin, which were cited by the counsel upon the hearing, have no striking application, and are not very consistent. These which favor most the argument for the defendant, are Carpenter v. Stevens, (12 Wend. 589,) and Swift v. Barnes, (16 Pick. 194.) In Carpenter v. Stevens, the defendants, in an action upon a replevin bond, when the non-return of the property pursuant to a judgment de retorno habendo, was alleged as a breach of the condition, pleaded that before the judgment was rendered, the property had perished by inevitable accident without any default of the defendant, Stevens, (the plaintiff in the replevin,) his servants or agents, and upon demurrer the supreme court, holding'the plea to be a good bar, gave judgment for the defendants. This decision, if admitted to be law, apparently justifies all the conclusions that were drawn from it by the counsel for the defendant. If the plaintiff in replevin is discharged from all liability when the property has perished by inevitable accident, he cannot be responsible for damages resulting from a deterioration which it was impossible for him to guard against or prevent. Hence, when the judgment is for a return, he must take the property in its actual state, and is not entitled to damages not imputable to the act or default of the plaintiff, and consequently, if the property is not returned, its actual value, when the judgment was rendered, can be the only measure of damages in a suit upon the replevin bond, *644 since the loss of this value is the whole extent of the injury sustained. By analogy, it is for the same value that judgment must be given, when a judgment for the value, instead of a return, is rendered by the election of the defendant. To complete the chain of inference, it remains only to add, that if the value of the property, when the judgment is rendered, is the true measure of damages when the value is depreciated, it must be equally so, when it is enhanced. The rule, if not uniform, would lead to manifest injustice.
The inferences that have been stated, seem to follow in a logical sequence, and if the decision' in Carpenter v. Stevens were admitted to be law, we should find it difficult to resist them. But this admission we cannot make. The decision is one of those which we regret, but are constrained to say, we cannot follow. It appears to us to be wrong in principle, and it is plainly contradicted by many authorities. The undertaking of the plaintiff in the replevin bond, we conceive, is absolute to return the goods, or pay them value at the time of the execution of the bond. We cannot think that a wrongdoer is ever to be treated as a mere bailee, and that the property in his possession is to any extent at the risk of the owner. We have seen that the defendant in trover or trespass is in all cases responsible for the value of the property when taken or converted, and certainly it has never been supposed that he can discharge himself from this responsibility, in whole or in part, by showing that the property had been destroyed or injured by an inevitable accident, after he had obtained its possession. A plaintiff who, without right or title, has seized the property of another by a writ of replevin, is as much a wrongdoer as a defendant in trover. No reason can be given why his liability should be less extensive, and in fact when the replevin suit is terminated, although he cannot be treated as a trespasser, he may be sued in trover at the election of the defendant. (Yates v. Fasset, 5 Denio 21.) The decision in Cmpenter v. Stevens is plainly inconsistent with the prior decision of the same court in Rowley v. Gibbs, (14 John. 385,) in which the defendants in a replevin, in addition to a return of the goods, were held to be entitled to damages for a deterioration in their *645 value, from the time of the replevy, although it was not pretended that the decrease in value was attributable in any degree to the act or default of the plaintiff; and it is irreconcilable with the numerous cases, in which it has been held expressly, or by a necessary implication, that in a suit upon the replevin bond, the value of the property, as fixed by the penalty of the bond, is, at the election of the plaintiff, the true measure of damages. (Middleton v. Bryan, 3 M. & Sel. 158; Mattoon v. Pearce, 12 Mass. 406; Huggeford v. Ford, 11 Pick. 222; Wood v. Brainerd, 9 ibid. 322; Barnes v. Bartlett, 15 ibid. 71, and opinion of court at page 77, &c.; Brizsee v. Maybee, 21 Wend. 144; McCabe v. Morehead, 1 Watts & Sergt. 563.)
In the second case, Swift v. Barnes, it was held by the supreme court of Massachusetts, in a suit upon a replevin bond, that the plaintiff, who as the defendant in the replevin had obtained a judgment de retorno hdbendo, was entitled to recover the value of the property, at the time its return was demanded under the writ of restitution. We infer from the report, that the property at the time was still in the possession of the defendant, and if so, the decision is in perfect harmony with our own views.
None of the replevin cases, as we have before intimated, have a direct application to the present. In none has the exact question that we are now required to determine been decided or considered. The election which is given to a successful defendant to take judgment for a return of the property, or for its value, we believe, is peculiar to our own municipal law. It is a new provision in the revised statutes; and so far as we have been informed, or have discovered, this is the first case in which the question as to its proper construction has been raised for decision. This question leads to the next branch of our inquiry, namely, whether the rules which we have endeavored to show ought in all cases to be followed, are consistent with the provisions of the statute; and that they certainly are so, no observations can be requisite to prove. It is sufficient to read the statute. It contains no reference to the period at wliich the value for which judgment may be taken is to be calculated, and no definition of the principles that are to govern the estimate of *646 damages, but leaves the question, which the omission creates, to the determination of the judges, according to the rules of justice and the analogy of the law. In construing the statute, we think that we are bound to give to the term “ value,” a definite and uniform sense, since we cannot believe that the application was meant to depend upon the mere will of the defendant, or the arbitrary discretion of a jury. It means either the value of the property at the time of the replevy, or at the time that the defendant elects his judgment; and if the latter is its true application in any case, it must be so in aE. Upon this supposition, however, the consequences that have before been stated inevitably follow, that if the property has perished or wholly lost its value, without any neglect or fault imputable to the plaintiff or his agent, no judgment at all can be given, or a judgment only for a nominal amount. We cannot hesitate, however, to reject an interpretation as contrary to the probable intention of the legislature, which casts the risk of the destruction or deterioration of the property upon the owner, instead of the wrongdoer, especially as by adopting the value at the time of the replevin, not only is this consequence avoided, but entire justice may in aE cases be done to the parties, since, if the sum at which the value is assessed is less than the whole amount which the owner ought to recover, the deficiency may be made good in the estimate of damages.
The resrdt of our opinion is, that the referee has erred in assessing the value according to the price of flour at the time of the defendant’s election, and in allowing interest upon that sum from the time of the replevin. The report must therefore be set aside, and there must be a rehearing or trial, unless the parties will consent that judgment shall be entered for the value, according to the price of the flour when replevied, with interest from that time, there being no evidence to show that any special damage, exceeding the interest, has been sustained.
We shall make no excuse for the length of this opinion. Our motives for examining the subject so fully as we have done, we have no doubt, will be understood and appreciated. The arbi- ■ trary distinctions which were permitted to flow from a difference in the forms of action, are now abolished, and the time has *647 arrived, when general and uniform rules upon the subject of damages, rules so just and comprehensive, as to be susceptible of universal application, may be adopted. To lay down and establish these rules is the province and duty of judges, and it is this duty that we have wished to discharge. (a)

 At a subsequent term, the counsel for the defendant elected to take judgment ©n the principle settled by .the .court, and it was entered accordingly.