## SCOTT v. ROGERS.

December, 1863; again, December, 1864.

Where a merchant directs his factors to sell merchandise on a certain day, at a fixed price, and if not sold, to ship it, the factors have no authority to make an offer, on the day named, to be accepted the next day, at the price specified.

The damages for a factor's selling in violation of instructions, may be ascertained by referring to the net market price of the goods, at a reasonable time afterward, within which to commence the action.*

What is a reasonable time, is a question of fact.

Martin B. Scott sued George W. and William T. Rogers (the latter alone answering), in the Buffalo superior court, for damages for an alleged conversion of wheat. On July 12, 1853, plaintiff, a dealer in produce in Cleveland, Ohio, telegraphed to defendants, factors in Buffalo, to sell, on that day, the wheat of plaintiff they had on storage, at one dollar and eight cents per bushel, or ship to New York, if not sold on that day for

---

* Compare Burt v. Dutcher, 34 N. Y. 493 ; Markham v. Jaudon, 41 Id. 235; Hinde v. Smith, 6 Lans. 464 ; Lawrence v. Maxwell, Id. 469 ; Lobdell v. Stowell, 51 N. Y. 70, affirming 37 How. Pr. 87; Groat v. Gile, 51 N. Y. 431; Mathews v. Coe, 49 Id. 57.

that price. The same day, defendants gave ·to one Noye a sample of the wheat, and offered it to him at that price. Noye asked the privilege of waiting until the next morning before completing the sale, which defendants granted, provided no news should be received to change the value. The sale was made to him next morning, on his accepting the offer; but was repudiated by plaintiff, immediately upon hearing of the transaction.

The court below found that the sale was made in good faith, but was unauthorized. Plaintiff only claimed the difference between a dollar and eight cents and the price the wheat could be sold for in New York. Such wheat sold there as high as one dollar and sixty-eight cents on November 28, and for one dollar and sixty-five cents on November 29, 1853. The court held that the measure of damages was the difference between the price of the wheat as sold, and what it was worth (less expenses of keeping and sale) at a reasonable time after the sale, within which to bring the action; and fixed the latter date at November 29, 1853.

Besides general exceptions to the findings, defendants excepted to the measure of damages, claiming it should have been the difference of price between July 12 and August 2, when the wheat might have been sold in New York. They also excepted to fixing November 29 as the date.

*The superior court*, at general term, affirmed judgment for plaintiff. Defendants appealed.

The cause was argued in this court in October, 1863.

*T. C. Welch*, for appellants;—Insisted that the sale was a substantial compliance with plaintiff's intentions, citing as authorities for disregarding technical departures from instructions, Lawler *v.* Keagwick, 1 *Johns. Cas.* 174; Drummond *v.* Wood, 2 *Cai.* 310; Parkhill *v.* Imlay, 15 *Wend.* 431; Evans *v.* Potter, 2 *Gall.* 13; Clark *v.* Van Northwick, 1 *Pick.* 343; Day *v.* Noble, 2 *Id.* 615; Geyer *v.* Decker, 1 *Yeates*, 486; Dusar *v.* Perit, 4 *Binn.* 361; Judson *v.* Sturgis, 5 *Day*, 556; Russel *v.* Harkey, 6 *Durnf. & E.* 12; Ludlow *v.* Simond, 2 *Cai. Cas.* 1, 49; Guy *v.* Oakley, 13 *Johns.* 332; Leverick *v.* Meigs, 1 *Cow.* 645; Bell

*v.* Palmer, 6 *Id.* 128; Cunningham *v.* Bell, 5 *Mas.* 161; 1 *Pars. on Cont.* 80.

*John Ganson,* for respondent;—Insisted that the failure to adhere strictly to instructions was a breach for which defendants were liable, citing Evans *v.* Root, 7 *N. Y.* 186. The authorities cited on the other point appear in the opinions.

THIS COURT held that the sale on the thirteenth, pursuant to negotiations on the twelfth, was a breach of instructions, and constituted a cause of action, DENIO, Ch. J., stating the reasons as follows:—This is apparently a very hard action. The defendants sold the plaintiff's wheat in entire good faith, at the price which he had set upon it. The negotiation for the sale was commenced on the day limited, and the purchase money was at the plaintiff's disposition at an early hour on the ensuing day. But it was not shown that it was according to the course of business, or necessary to the consummation of such sale, that an opportunity should be afforded to the purchaser to examine the article; and there is not anything in the circumstances, so far as I can discover, to qualify the plaintiff's precise direction, limiting the sale to July 12, and giving an alternative direction, if a sale at the prescribed price should not be effected on that day.

To a common intent, this direction looked to a completed sale on the day mentioned; and there is no circumstance shown to give the language a greater latitude. In fact, no sale was made on that day, but only an offer, which the person who became the purchaser was at liberty to accept or refuse the next morning. The sale was, therefore, contrary to the plaintiff's instructions, and the defendants became liable to pay damages for their breach of duty.

The owner of property entrusted to a factor for sale has, where the latter has no lien for advances, an absolute right to prescribe the terms of sale, and the time at which it shall be made, and a proximate compliance with instructions, though done in good faith, is not an answer to an action for damages on account of their violation.

A majority of the judges concurred in this; but the judges

Scott *v.* Rogers.

were equally divided as to the proper measure of damages,* and a reargument of that question was therefore had in September, 1864.

---

* The opinions on this question were as follows:

DENIO, Ch. J.—An action of trover could, no doubt, have been maintained for the conversion of the wheat. In that action, the measure of damages, generally, is the value of the property at the time of the conversion, and interest thereon to the time of the verdict. Such damages in this case would not much exceed the amount which was realized on the defendants' sale, for there was no evidence that the wheat was worth more in Erie county at the time the sale was consummated, than the price at which the defendants sold it, though there was a rise in price soon afterwards.

The plaintiff's business was one in which he sought to make gain and profits by the purchase and sale of this species of property, and it was perfectly lawful for him to elect when he would expose it to sale, and in what market; and, upon general principles, he should have redress against any one who, by an unauthorized act, has deprived him of the right to make such election.

In accordance with this principle, it has frequently been determined that the rule of damages referred to, as that generally prevailing in trover, is not inflexible. In Greening *v.* Wilkinson, 1 *Carr. & P.* 625 ; 11 *Eng. Com. L.* 499,—which was trover for a quantity of cotton,—it was shown to be worth six pence per pound at the time of the trial, and the defendant's counsel contended that the damages should be the value at the time of the conversion ; but that direction was refused by Lord Chief Justice ABBOTT, before whom the case was tried, who said that the jury might give the value at the time of the conversion, or at any subsequent time, at their discretion, "because," he said, "the plaintiff might have had an opportunity of selling the goods, if they had not been detained. I am, therefore, of opinion," he added, "that the price of the article on the day of the conversion, is by no means the criterion of the damages. It may be said that if he had wanted cotton, he might have immediately bought more at that day's price, as soon as he found that this cotton was detained from him ; but then, to do so, he must have had the money, which he might not have had ready on the very day of the detention, nor on any day after, until the price had risen ; and my opinion is, that the jury are not at all limited in giving their verdict by what was the price of the artice on the day of the conversion." It was a *nisi prius* case, but is still of great weight, on account of the character of the judge as an authority upon questions of commercial law.

A similar question arose in Wilson *v.* Mathews, in the supreme court of this State (24 *Barb.* 295). The plaintiff, residing in Niagara county,

*Henry W. Rogers,* for defendants, appellants.

*John Ganson,* for plaintiff, respondent.

sent to the defendant at Oswego, a quantity of wheat, to be by him forwarded to a firm in Troy; but he, contrary to his instructions, sent seven hundred bushels of it to a dealer in New York, and the plaintiff, on applying to that person, was unable to obtain it, upon which he brought the action; but whether it was grounded upon the conversion, or for the breach of the defendant's duty as a forwarder, does not appear, and is not, I think, material. The only question was as to the rule of damages the jury having, under the direction of the judge, given the highest price since the conversion, which was two dollars and seventy-five cents per bushel; and the direction was upheld by the general term in the first district.

It has been suggested that the principle of these cases is opposed to the rule frequently laid down, that prospective and uncertain profits ought not to be permitted to enter into the assessment of damages Masterton v. Mayor, &c. of Brooklyn, 7 *Hill*, 61; Blanchard v. Ely, 21 *Wend.* 342; and see Griffin v. Colver, 16 *N. Y.* 489; Hadley v. Baxendale, 9 *Wels. H. & G.* 341.

But the price to be obtained for a given article of merchandise, if the owner shall be permitted his choice of the time and place of sale, though contingent, cannot be said to be of an uncertain and speculative character, within the sense of the distinction; and yet, under certain circumstances as will soon be mentioned, such anticipated profits cannot be recovered in a class of cases.

Before referring to a few other cases in support of the conclusion to which I have come, I should mention that the form of action, whether in trover, assumpsit, or case, does not, in general, seem to be material to the question of damages, nor does it seem important upon what title the plaintiff claims the property which the defendant has illegally withheld from him.

There is a class of cases in which the plaintiff has purchased personal property by an executory contract, but the defendant has failed to deliver it according to the exigency of the agreement, where the courts have been called upon to lay down a rule of damages, which I think analogous to the case under consideration.

Where the contract is executory on both sides, as where the price is to be paid upon the delivery of the property, the measure of the damages is the difference between the conract price and the value of the article when it should have been delivered. This is upon the assumption that with the money he can go into the market and purchase the article. In such a case, if there has been no change of price, the recovery can only be nominal. But if the price be paid in advance, and nothing remains but to deliver the goods, the reason suggested by ABBOTT, Ch. J., in the

IV.—11

By the Court.—Hogeboom, J. [After stating the facts.]—
The gist of the action is for a breach of duty in making sale
of the wheat in violation of the instructions of the plaintiff,

case referred to, applies. The plaintiff may not have the ready money to
make a new purchase, and cannot be fully indemnified but by being al-
lowed any increased price which the property may be worth at a subse-
quent period, when, but for the fault of the defendant, he might have
sold it. The case of Leigh v. Patterson, 8 *Taunt.* 540 ; Gainsford v. Car-
roll, 2 *Barn. & C.* 624, in England, and Dey v. Dox, 9 *Wend.* 129, and
Davis v. Shields, 24 *Id.* 322, in this State, are examples of the first class ;
and West v. Wentworth, 3 *Cow.* 82 ; Clark v. Pinney, 7 *Id.* 681, here, and
Shepherd v. Johnson, 2 *East,* 211, and Greening v. Wilkinson, before
cited, in the English courts, will sufficiently exemplify the rule in the
second class ; and the reason of the rule will be found fully explained in
several of the opinions in those cases.

The case of factors or other agents who by their wrongful acts have
deprived the owner of property of his right to dispose of it, according
to his own views of his interest, stands upon the same footing in this
respect, with that of a purchaser by contract who has paid the price in
advance. Both have an absolute right to judge whether they will dis-
pose of it at one time or another, and if they are limited to the value at
the time of the wrongful act or omission which creates the cause of
action, they will in many cases fail to receive adequate indemnity for the
injury.

Such is certainly the reasoning of the courts in the cases in which the
question of damages has arisen, and whatever we may think of it, the
principle seems too firmly established to be changed by us. So far from
attempting to do so, we have recently affirmed it.

In Romaine v. Van Allen, 26 *N. Y.* 309, the plaintiff had pledged cer-
tain railroad stock with a bank, represented by the defendant, and it had
been sold by the pledgee without demand or notice, and we held that
the receiver of the bank was bound to pay the highest price which the
stock would have brought on the last day of the trial, therefore that
price was much greater than that which ruled on the day of the illegal
sale.

The superior court of Buffalo, in the present case, acknowledged it to
be a just qualification of the rule, that the action should be brought
within a reasonable time, and they determined that November 29, fol-
lowing July 12, on which the defendant sold, was such reasonable time,
and allowed the damages according to the price of wheat at that date.

We cannot say that they erred in this, should we even have preferred
an earlier date.

The question as to interest does not appear to have been mentioned on
the trial ; no objection to its allowance is taken in the exception to the
decision.

and in converting the same to the defendants' use, resulting in the loss of the wheat to the plaintiff, and in the loss by him of large gains and profits in the sale thereof.

For these reasons I am in favor of the affirmance of the judgment.

MARVIN, J., delivered an opinion in which,—after saying that the case showed a conversion on July 13, and also a disobedience by defendants of plaintiff's orders, and the action was maintainable for a conversion or a breach of duty ; and that for such breach of duty an action *ex contractu* or *ex delicto*, could be maintained,—he laid down the rule that in an action for the conversion of property, the damages were the value of the article at the time and place of conversion, adding, according to modern authorities, the interest upon such value, from the time of conversion to the time of trial. He cited the following cases as adhering strictly to this rule : Hallett v. Novion, 14 *Johns.* 273 ; Kennedy v. Strong, *Id.* 128 ; Dillenback v. Jerome, 7 *Cow.* 294 ; Baker v. Wheeler, 8 *Wend.* 505 ; Stevens v. Low, 2 *Hill*, 132 ; and Brizsee v. Maybee, 21 *Wend.* 144.

He then traced the origin of the practice of allowing for increased value up to the time of trial, for chattels not having a fixed or determinate value, particularly in actions on promises payable in chattels, to the cases of Clark v. Pinney, 7 *Cow.* 681 ; Cortelyou v. Lansing, 2 *Cai. Ca.* 200 ; West v. Wentworth, 3 *Cow.* 82 ; Commercial Bank of Buffalo v. Kortwright, 22 *Wend.* 348 ; followed in Nelson v. Mathews, 24 *Barb.* 295. The authorities cited in those cases, and in Suydam v. Jenkins, 3 *Sandf.* 614, he reviewed, and pronounced the rule laid down in West v. Wentworth, and Clark v. Pinney unsound, and unsupported by the authorities. He then reviewed additional cases relied on for allowing, in trover, the highest price to the commencement of suit or the time of trial (including Mercer v. Jones, 3 *Campb.* 477 ; Greening v. Wilkinson, 1 *Carr. & P.* 625 ; Baker v. Wheeler, 8 *Wend.* 505 ; Andrews v. Durant, 18 *N. Y.* 496 ; Dana v. Fiedler, 12 *Id.* 40 ; Whitten v. Fuller, 2 *W. Blacks.* 902) ; and concluded that the fluctuating rule was unjust and dangerous, and,—though there was sometimes difficulty in ascertaining the time of conversion, and the plaintiff might often determine it by a demand,— yet when determined, the rule should be inflexible to estimate the damages as of that day. He was therefore of opinion that the true rule of damages was, the value of the wheat, at the time it would have arrived in New York, had it been shipped, less the amount plaintiff received ; and that the judgment should be reversed.

BALCOM, J., delivered an opinion in which, after saying that the offer, in so far as it gave Noye the privilege of taking the wheat on July 13, was contrary to plaintiff's instructions, and defendants' sale on that day unauthorized and not binding on plaintiff, cited the following cases, beside others above mentioned ; Blot v. Boiceau, 3 *N. Y.* 78 ; Baldwin v.

Scott v. Rogers.

This embraces essentially a cause of action in case and in trover, and entitles the plaintiff to the damages recoverable in those actions. I am not aware that, in the absence of fraud or misrepresentation, or willful misconduct, there is any difference in the rule of damages applicable to this case, whether the action be for a breach of contract or for a violation of duty; and I agree with one of the judges who delivered opinions on the former argument,* and with the superior court of New York, in Suydam v. Jenkins, 3 *Sandf.* 614, that there should be none. The question is one of complete indemnity to the party injured. It is not stated in terms, and perhaps not in effect, that the sale by the defendants was *fraudulent or in bad faith*; and, therefore, no damages, founded specially on that ground, ought to be recovered. But it is stated that the sale was without authority and in violation of instructions, and, therefore, every damage consequent upon such a sale should be allowed. It is not stated that the instructions to ship to

---

Harvey, *Anth.* 214; King v. Leith, 2 *T. R.* 141; King v. Orser, 4 *Duer*, 431; Wilson v. Conine, 2 *Johns.* 280; Day v. Perkins, 2 *Sandf. Ch.* 359; Smith v. Griffith, 3 *Hill*, 333; Barrow v. Paxton, 5 *Johns.* 258; Martin v. Morgan, 2 *Martin* [*La.*] 256; Shepherd v. Johnson, 2 *East,* 211; Brown v. Sax, 7 *Cow.* 95; Babcock v. Gill, 10 *Johns.* 287; Betts v. Lee, 5 *Id.* 348; Curtis v. Groat, 6 *Id.* 168; Silsbury v. McCoon, 4 *Den.* 332; Rice v. Hollenbeck, 19 *Barb.* 664; Walther v. Wetmore, 1 *E. D. Smith,* 7; Wilson v. Little, 1 *Sandf.* 351; S. C., 2 *N. Y.* 443; Arnold v. Suffolk Bank, 27 *Barb.* 424; Fisher v. Prince, 3 *Burr.* 1363; Clowes v. Hawley, 12 *Johns.* 484; Cunningham v. Bell, 5 *Mas.* 161; Frothingham v. Everton, 12 *N. H.* 239; Richmond v. Bronson, 5 *Den.* 55; Hargous v. Ablon, 5 *Hill,* 472; S. C., 3 *Den.* 406; Shannon v. Comstock, 21 *Wend.* 457; Blanchard v. Ely, *Id.* 342; Pinney v. Gleason, 5 *Id.* 393; Rockwell v. Rockwell, 4 *Hill,* 164; and concluded that to limit the damages to the value at the time of the conversion, would often give plaintiff less than the actual damages he had sustained, and on the other hand, defendants having acted in good faith, could not justly be held for the highest price reached in four months; and that the just rule was that the owner should never receive of the factor who has wrongfully sold, more than the direct and certain damages the owner sustained, except in the cause of fraud or bad faith. That it would not do to allow the highest price even within a reasonable time for a sale after arrival in New York, for this would introduce speculative damages. He likened the defendant's obligation to that of common carriers; and was therefore for reversal.

\* Opinion of DENIO, Ch. J., p. 161, *above.*

New York were with a view to the *immediate* sale of the wheat on its arrival at New York, and, therefore, the plaintiff should not be limited to the price of the wheat immediately after it would have arrived in New York, if forwarded according to the plaintiff's instructions. But it is stated, inferentially at least, that the order to ship to New York was with a view to an ultimate sale there, inasmuch as it is stated that, by the act of the defendants, the plaintiff lost large gains and profits in the *sale* of the wheat; and hence we may, perhaps, safely infer that the object of the plaintiff was eventually to make sale of the wheat. Perhaps, if this would involve a more restricted rule of damages than would otherwise obtain, the plaintiff is not limited to it, inasmuch as there is in the complaint substantially an allegation of an illegal conversion of the property by the defendants, entitling the plaintiff to such damages as belong to such a cause of action.

The causes of action in the complaint were sustained by the evidence. There was a plain violation of instructions by the defendants, though probably not in bad faith, and a sale by them at Buffalo or Tonawanda at a date when they were expressly ordered to ship to New York. This was a clear breach of duty, and, in effect, a conversion of the property; and the question returns, what damages was the plaintiff entitled to recover?

If the plaintiff's orders had been obeyed, he would have retained his property, and might, if he had so chosen, have kept the same up to the time of the trial, when a recovery for the value thereof would, in effect, and by operation of law, have transferred the title thereto to the defendants; or he might have elected his own time and place for the sale thereof. Of both of these rights he was deprived by the act of the defendants; and the defendants must make the plaintiff good. There is nothing in the case or in the evidence by which we can precisely ascertain what the plaintiff would have done with the property if he had retained it; and this presents one of the chief difficulties in ascertaining, in point of fact, the damages which the plaintiff has sustained. If he designed an immediate sale thereof, on its arrival in New York, the price at which he could have sold it at that time, as compared with the price

which the defendants got for it, and which, from a stipulation in the case, we are authorized to infer, has been paid over to the plaintiff, would show the loss sustained by him. But, as before stated, neither the allegations in the complaint nor the evidence in the case disclose any clear proof of an intent to make an immediate sale; and I think, as well under well-settled rules of law as by the reason and spirit of the case, plaintiff ought not to be limited to such damages. He may be supposed to have been reasonably conversant with the market and with the prospects of a rise in price, and to have anticipated, to some extent, the results as to such rise, which subsequent events verified. What precisely he would have done is, as before stated, a question of difficult solution. If, at some subsequent time within a reasonable period after the conversion, he had notified the defendants of his election to adopt the price at that period, I think that would have fixed a reasonable and lawful standard for the estimate of damages. It would have been saying, in substance, I elect to consider the property as mine up to this period; I now elect to make sale of it, and I hold you responsible for the present value of the property. But no such course was taken. No notice was ever given, otherwise than such as is to be inferred from the commencement of the suit. No suit was commenced until years afterwards; and it is now claimed to be the legal rule that the aggrieved party may make price at any time after the conversion and before the trial of the cause, or, at least, that he may do so provided the suit is commenced within a reasonable time after the conversion. This was the rule adopted at the trial, with this qualification, that the price at the commencement of a suit, commenced within a reasonable time after the conversion, instead of the price at the time of the trial, furnished the criterion for estimating the damages.

In the absence of any definite means for ascertaining the period when the owner of the property would have disposed of it, we are necessarily more or less in the dark as to the amount of injury which he has sustained by the illegal act of the defendants, and are driven to resort more or less to conjecture, or to fix upon some arbitrary period for determining the price of the property. . It is obviously a rule of doubtful justice to give

. to the plaintiff the whole period until the statute of limitations would attach for the commencement of his action, and the whole period intervening between the conversion and the trial to select his standard of price, without ever having given notice of his intention to adopt the price of any particular period. A much more just and equitable rule, independent of adjudications upon this question, would seem to be, to allow the plaintiff some reasonable period within the statute of limitations for fixing the price of the property, provided he notifies the adverse party *at the time* of such act on his part; but never to allow him unlimited liberty of selection as to the price of which he will avail himself at the trial of the cause. If he does not make and notify his election of time, then to fix the time by the day of commencing the action, provided the action be commenced within a reasonable time after the conversion. This is an election to hold the defendant liable for the conversion, and in effect to treat the property as his. The time of the trial and verdict is, it is true, the time of the actual transfer of the property to the defendant by operation of law, or, rather, the payment or collection of the sum recovered completes and perfects the legal transfer to the defendant. But the commencement of the suit is the election to hold the defendant liable from and after that date, for the value of the property. Thus, as it appears to me, is justice done to both parties. The defendant, by converting the property, becomes liable for its value. If the plaintiff elects to take its value as of that date, the defendant has had the benefit of that precise sum. If the plaintiff at any time makes price, and notifies the defendant, whether it be by a specific notice before the commencement of the suit, or by the actual commencement of the action, the defendant can go into the market and sell the property of the plaintiff which he has theretofore converted to his use and realize its market value, or, if he has disposed of it, sell the property which, at the time of the illegal conversion, if he wishes to protect himself from loss, he is legally bound to provide himself with as a substitute for it, to meet the plaintiff's demands. Thus the defendant can substantially indemnify himself against loss; and if he fails to take measures to do it, is justly responsible in damages for his unwar-

ranted aggression upon the rights of the plaintiff. This seems to me the just and equitable rule.

It is not, however, perhaps quite the rule which has obtained in the law for settling the question of damages in the case of an illegal conversion of property. I think that rule is too well settled now to be shaken, whatever we may think of its intrinsic justice and propriety; and there are strong reasons to be urged in its favor in these respects. The defendants' counsel wish to unsettle it; but it is better to abide by a rule of law that is firmly established in repeated adjudications of the courts, than to have a fluctuating rule which is constantly varying according to the caprice or the fallible judgment of judges or juries.

I think the rule of damages applicable to cases of this description is reasonably well settled to be as liberal as this in favor of the plaintiff, to wit: to allow to the plaintiff the highest price for the property prevailing between the time of conversion and a reasonable time afterwards for the commencement of the action. Some of the cases carry the period up to the time of trial of a suit commenced within a reasonable time ; and as between these two periods—the time of commencing the suit, and that of trial—the rule is somewhat fluctuating. What this reasonable time shall be, has never been definitely settled, and may, perhaps, fluctuate to some extent according to the circumstances of the particular case. In the case at bar, it was held to be four months after the conversion, which terminated before the close of navigation in that year; which latter circumstance might perhaps be supposed to have some probable influence in raising the market price of the property in New York, and therefore as not unlikely to induce the plaintiff to retain the property until that time. I think the adjudications allow at least so much latitude in cases similarly circumstanced. For reasons before stated, the limit of time is necessarily to some extent arbitrary, for the want of available means to determine when the plaintiff would have sold his property, and, by consequence, the damages he has sustained. But it has been supposed, and I think reasonably, that a liberal allowance of time should be made in favor of the plaintiff and against the defendant, inasmuch as the latter is the defaulting party.

It has been held in cases where damages are sought for the breach of a contract for the sale of personal property, wholly executory on both sides, that the true rule of damages is the difference between the purchase price named in the contract and the price of the property at the time fixed for performance; that, as nothing had been paid upon the property, if the plaintiff still wished to obtain the property, he could go into the market and procure it with the sum named in the contract, with the addition of its rise in value, or, if he chose simply to pocket the damages, he could do so by receiving a sum equal to the difference in value between the two periods, and thus obtain complete indemnity.

But that, where the executory contract had been performed on the part of the plaintiff by the payment of the price, and was broken by the defendant by the non-delivery of the property, the true rule of damages was to allow to the plaintiff the highest market price intervening between the time of conversion and the time of the commencement of the action, or of the trial when the action was commenced within a reasonable time after the conversion, upon the principle that it might be inconvenient or impossible and was unjust to require the plaintiff, in order to procure a similar article to that illegally converted, to pay the contract price a second time, with the added value prevailing at the period of performance; and that it was more equitable to hold the defendant responsible for the fluctuations of the market, so long as he continued to deprive the plaintiff of the article purchased, up to the period when, by operation of law and the effect of a verdict, the title was transferred from the plaintiff to the defendant.

It is further stated, in one of the opinions delivered in this case at a former term of this court,* that the present case is in principle analogous to that of an executory contract for the purchase of the property, where the purchase money is prepaid, inasmuch as the plaintiff, owning the property, has paid its price and acquired an absolute title to it, and cannot with justice be called upon to advance again the purchase money to buy a similar article. I concur in this reasoning, and think the same principle governs both cases. The plaintiff has, in

---

* Opinion of DENIO, Ch. J., p. 162, *note, above.*

effect, advanced the price of the article; he has done more; he has become its absolute owner. He is not to be required to purchase similar property anew, for he may not be in a condition to do so, and he has lost his property, not by any fault of his own, but by an unjustifiable appropriation of it by another party. On the other hand, his adversary has, without legal right, possessed himself of another's property, and placed himself in a situation where he may possibly realize large gains from property thus arbitrarily acquired.

The difficulty lies in fixing the precise period when the value of the property should be estimated. I think it must, in all cases, be a *reasonable time* after the conversion. Even if the evidence is satisfactory that the plaintiff intended to retain the property, I do not think he should be permitted to roam through the entire period between the conversion and the time when the *statute of limitations* would attach, for the purpose of discovering the highest price at which the property sold in market. This gives to the transaction the color of a mere speculation, and not of a just ascertainment of damages actually sustained. The plaintiff might repossess himself of the article lost, if not restored to him by the act of the offending party within a reasonable time after he has been deprived of it, and this would make him good. The defendant, in default of a restoration of the property or an article of similar quality, should be held to answer for its value within a reasonable period. To compel him to respond for a succession of years for fluctuations in value, would seem unjust and oppressive.

Where the party, as in this case, holds the property for the purpose of traffic and sale, a reasonable period, according to the course of trade, should be allowed for the purpose of making such sale. If it be clear upon the evidence that an immediate or speedy sale were contemplated, I think such a fact would contract the limits of this reasonable period. If it were clear that months were expected to intervene before a sale should take place, I see no objection to extending this reasonable period to a similar length. If the evidence reflected no light on the subject, then a reasonable period would probably be a question of law, or, if some evidence were introduced, might be a mixed question of law and fact.

Scott *v.* Rogers.

I am unable to see that, on this question of reasonable time, the judge at the circuit committed any error which the facts in the case enable us to pronounce such, or of which the defendant is in a situation to avail himself. The judge charged —or held, for the trial was before the judge without a jury— that the measure of damages was the difference in price of the wheat at the time of the conversion and a reasonable time afterwards within which to commence the action; and in the light of what has been already said, I think the rule of law is therein well expressed. He further held that such reasonable period was four months after the time when the wheat, if duly forwarded, would have reached its destination in the city of New York. This is supposed to have been error. By what legal rule are we entitled to pronounce this to be error? What is there in the evidence to show that this was an unreasonable time? The party alleging error must show it—the presumption being in favor of the correctness of the ruling. Is it claimed that the reasonableness of the time depended on the circumstances of the case, and was a question of fact? Then the judge has found the fact against the defendants, and they are remediless. No request was made to find any specific time as the reasonable time, nor objection made to the decision of the question of reasonable time as a question of fact by the judge, so far as there was a question of fact involved in it. An exception was taken, it is true, to the determination of the judge, that November 29 was a proper date to make the valuation of the wheat; but there is no evidence to show that that time was unreasonable, and, therefore, the only question presented is one of law, whether the defendant was liable to have the damages estimated by the price of the wheat at a reasonable time after the conversion.

I have not thought it necessary, after the copious citations and searching analysis of adjudicated cases contained in the opinions delivered on the former argument of this cause, to refer to them again or discuss them in detail. I have referred to the principles which are involved in them, and also to those which pertain to an equitable view of the subject. The result of my reflections and examination of the cases is, that the rule

laid down at the trial is sustained by the course of decision on this vexed question.

I am of opinion that the judgment of the court below should be affirmed.

DENIO, Ch. J., DAVIES, WRIGHT, H. R. SELDEN and INGRAHAM, JJ., concurred; MULLIN, J., dissented.

Judgment affirmed, with costs.