## HOYT *a.* SHELDON.

*New-York Superior Court; General Term, December*, 1856.

### SUPPLEMENTAL ANSWER.—WHEN ALLOWABLE.

Section 177 of the Code has provided a uniform mode of bringing before the court matters of defence which existed when the answer was put in, but of which the defendant was then ignorant, as well as matters of defence which have arisen after issue joined. That is to be done by supplemental answer.

As section 469 continues in force all the pre-existing rules and practice of the courts in civil actions, not inconsistent with the Code itself, the settled rules and practice of the courts of law and of chancery must be consulted, in determining whether the application is, in substance, one of strict right, or is addressed solely to the discretion of the court.

Such applications should be granted, as a general rule, unless they have been too long delayed, or are clearly frivolous, or the defence they present is so inequitable in its nature that the permission sought should be refused for that cause.

On the facts of this case—*Held*, that the motion could not, properly, have been denied on the mere ground of *laches*.

The court will not, as a general rule, after the time to answer has expired, allow a supplemental answer to be put in, to set up a technical defence, which may operate as a forfeiture of a just claim.

But when the cause of action is one of equitable cognizance, although it may be one of strict legal right, and can be enforced only by depriving a defendant of property bought in good faith from an assignee of a common debtor of the plaintiff and the defendant, and which property, on principles of general equity, may as properly be applied to satisfy the claim of the defendant as that of the plaintiff, the court will not attempt, on such a motion, to determine the equities of the parties, and refuse leave to set up the defence.

The court will not do so, when, upon the settled principles of equity proceedings, the particular defence may properly be overruled, if giving effect to it, according to its legal operation, would defeat a cause of action, contrary to the intent of the parties to the transaction which constitutes the supposed defence.

When it cannot well be decided, except upon a hearing of the whole case, whether, as between the parties to the action, it would be inequitable to give effect to the defence, if proved, and the court is competent to dispose of that question at the hearing, as may be just, a supplemental answer will be allowed.

Appeal from an order denying a motion for leave to file a supplemental order.

This action was commenced by Jesse Hoyt against Abraham G. Thompson, The Long Island Railroad Company, and others, in the month of December, 1847. It was brought to recover a debt originally contracted by The Long Island Railroad Company in favor of the Morris Canal and Banking Company. The latter Company, being indebted to the State of Michigan, in December, 1840, assigned this debt, and others owing to it, to that State, as security for, or in part payment of, what it then owed to that State. It is alleged that this transfer was made without any authority from the directors of the Morris Canal and Banking Company, and with knowledge of the officers of that State that the Company was insolvent. That State subsequently sold the debt, and new securities it had taken for the payment of the same, and Abraham G. Thompson purchased them, ostensibly on his own account alone. Thompson bought them on the 24th of May, 1843.

In May, 1841, Richards & Selden recovered a judgment for $30,000 against the Morris Canal and Banking Company, and subsequently recovered, and obtained by assignments, other large judgments against the Company. In the latter part of 1841, they filed a bill in the Court of Chancery of New-Jersey, against the Company, alleging its insolvency, and obtained an order appointing receivers of its property and effects.

The plaintiff and others, in 1844, purchased of Richards & Selden these said judgments, and took a conveyance to S. Sanxay. The receivers, in November, 1845, by order of the Court of Chancery of New-Jersey, assigned the claim of the receivers in respect to this debt and other claims, to Sanxay, in part payment of the judgment in favor of Richards & Selden, that court having decreed that such judgment was entitled to priority of payment out of the assets of the Company. Sanxay subsequently assigned the same and the judgment, to the plaintiff, he having become sole owner.

The plaintiff applied to Thompson and Mr. Fisk, president of the Railroad Company, and requested them to account to him for said debt, securities, and interest, amounting in all to some $65,000. This they refused to do. The bill prays, among other

things, that Thompson be decreed to assign a bond and mortgage he had taken of the Railroad Company to secure $40,000 of the debt; and that he, or Fisk, or both, should pay him all money received by them on account of such debt and interest. Thompson, Fisk, and the Railroad Company demurred to the bill. The proceedings on the demurrer are reported in 3 Sandford's S. C. R., 416, and 1 Selden, 320.

After the decision by the Court of Appeals, in 1851, overruling the demurrers, Thompson died. Sheldon subsequently qualified as his executor, and answered the bill on December 30, 1854.

In April, 1855, an order was made by consent, appointing Abraham Underhill, Esq., a referee, to take the testimony in this action, and report the same to the court.

On November 9, 1855, Mr. George Griswold was examined, and gave testimony tending to show, that he was in fact interested in the purchase of the debt in question made by Thompson, at the time it was made, but that he parted with all his interest to Thompson before any claim had been made upon the latter by Hoyt. That Hoyt, since this action was commenced, had preferred claims against Griswold, arising out of his transactions with the Morris Canal and Banking Company, and those claims became the subject of a litigation between them. The suit was settled, and Hoyt executed a release to Griswold dated November, 17, 1853. That was produced in evidence, subject to the objection of the plaintiff, and marked Exhibit A. & A. To avoid the necessity of making the whole release a part of the evidence, and to gratify Mr. Griswold, who desired that it might not be done, by agreement of the counsel then attending before the referee, a stipulation, entitled in this action, was entered upon the referee's minutes as a part of the proceedings had before him, and which stipulation was in the following terms:

" It is stipulated on the part of the attorneys of the defendants respectively, that all the recitals and premises contained and set forth in the release from Jesse Hoyt to George Griswold, marked Exhibit A. & A, offered in evidence on the part of the defendants, relates to matters and things having no connection with the subject of the plaintiff's claim in this action; and thereupon it is consented on the part of the plaintiff that, as such recitals and premises of said release are of the private concern of said Griswold, the defendants may give in evidence, and make an exhibit

of, only the operative or releasing clause of said instrument, said plaintiff not waiving any objection made on his part to the admissibility of said release as evidence in this cause. New-York, December 5, 1855."

" The operative clause referred to, was as follows :"

It is then set forth in the minutes of the proceedings before the referee. It releases Griswold from every claim or demand of Hoyt, past, present, or future, by reason of all or any of the claims, demands, or matters herein before recited or referred to, and each of them, and also for or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the day of the date of these premises.

Mr. Jordan, the counsel of Sheldon, was not present when Mr. Griswold was examined, and the release was produced, nor when the stipulation was given. His affidavit showed, " that deponent neither made, nor consented to any such stipulation, nor authorized or empowered any other person to do so, on his behalf as counsel for Sheldon. That it is prejudicial to the rights of Sheldon, and he doubts and disbelieves that it is according to the truth." (It is not pretended in the affidavits that the attorney of Sheldon was present.) Mr. A. L. Jordan also deposed, " that the report of the referee is erroneous, in stating that he was present before the referee when the stipulation was made. That he is verily of the opinion that it is important to the rights of the defendants in this action, that a supplemental answer be filed, setting up said release as a matter of defence." All proceedings before the referee were formally closed on March 7, 1856.

On May 7, 1856, the defendants served notice of a motion to be made on the aforesaid affidavits and other papers, on the 15th of that month, for an order, that the proofs be opened, and leave granted to each defendant to put in a supplemental answer setting up said release as a defence, and for a further order correcting the report of the referee, in respect of any consent by Sheldon, or his attorneys or counsel, to the stipulation referred to therein,—so that it shall appear upon the record by said report, according to the fact, that said Sheldon did not consent thereto, or in any manner become a party to the same ; and for a further order that said referee return as a part of the evidence before him, a true copy of the whole of said release ; and for other relief.

The motion was heard before Mr. Justice Duer, who, by order dated May 31, 1856, denied the same. But the order provided that the defendants have leave to produce and read the release on the trial of said cause, subject to all legal exceptions on the part of the plaintiff, and that the cause be placed on the calendar of the next June term for trial.

From so much of the order as refused leave to file a supplemental answer, and denied the application to correct the referee's report, the defendant Sheldon now appealed to the General Term. Other facts are stated in the opinion of the Court.

*A. L. Jordan*, for appellant.

*William M. Evarts*, for plaintiff, insisted that the order appealed from should be upheld on three grounds :—I. That the moving party had shown great laches in making the motion, and his motion, so long delayed, was not entitled to the favor of the court.

II. That the release by plaintiff of Griswold, as shown upon the proofs, constituted no defence to Thompson's executors against the plaintiff's claim (1 *Story's Eq. Jur.*, § 145).

III. That if a legal defence, such release would become so only by technical operation, against the intent of the parties to it, and entirely outside of the subject and consideration of such release. In such a case, the aid of the court is always refused to assist a legal defence, which is inequitable and unconscionable (Fulton Bank *v.* Beach, 1 *Paige*, 432; *S. C.*, 3 *Wend.*, 573; Packson *v.* Varick, 2 *Wend.*, 294).

*By the Court.*[*]—BOSWORTH, J.—The Code (section 177) provides that a defendant may be allowed, on motion, to make a supplemental answer, alleging facts material to the case, occurring after the former answer, or of which he was ignorant when his former answer was made.

This section provides a uniform mode of bringing before the court, not only facts which existed when the answer was put in, but of which the defendant was ignorant when his answer was interposed, but also matters of defence which arose subsequently.

The first question that arises is, must the court grant every

---

[*] Oakley, C. J., and Bosworth, Hoffman, and Woodruff, JJ.

such application as a matter of course, if satisfied of the existence of material facts, not known to the defendant when he answered, or which occurred subsequently thereto, without reference to the question whether they present an inequitable defence, or whether the defendant has been guilty of laches in making his motion.

If some applications should be granted and others denied, by what rules of discrimination should the court be influenced or controlled?

Section 469 continues in force, by an express provision, all · pre-existing rules and practice of the courts, in civil actions, consistent with the Code itself.

The natural inference is, that when matter of defence to an action at law has arisen since issue joined, any defence which a party could have pleaded at law, *puis darrein continuance*, as a matter of strict right, he should be allowed to set up by supplemental answer, if he applies within the time within which the right to plead, according to the former practice, was absolute.

If he suffers that time to pass before he applies, leave should be granted or refused, as may be proper according to the practice controlling applications for liberty to put in such a plea, after it had ceased to be a matter of right to plead it.

If the action be one of equitable cognizance, leave should be granted or refused as it would have been under the old system, on a motion for liberty to file a supplemental answer, or a cross bill in the nature of a plea *puis darrein continuance* at law, setting up matter of defence, which had arisen after the cause had been put at issue.

Courts of law allowed a defendant, who had obtained an insolvent's discharge, but who had neglected to plead it *puis darrein continuance*, to plead it *nunc pro tunc*, on payment of costs of the motion (Shaw v. Wilmerden, 2 *Cai.*, 380 ; Broome v. Beardsley, 3 *Ib.*, 172). The same rule was applied to any defence which was not deemed inequitable. Continuances were from term to term. If a circuit intervened, and a defence arose after the last continuance, and before the circuit, and a plea was tendered at the circuit, even after the jury was empannelled, the judge was bound to receive it. It was error to refuse (Broome v. Beardsley, *supra*).

If plead in time and verified, it must be received, however irregular, although bad on the face of it (*Gra. Pr.*, 297; Morgan *v.* Dyer, 9 *Johns.*, 255; 10 *Ib.*, 161).

It might be plead in a Court of Common Pleas, upon the case of an appeal from a Justice's Court (1 *Wend.*, 80).

In some cases, where matter was pleaded *puis darrein continuance*, although it would be a bar, the court would interfere and set the plea aside, if it was contrary to justice: as where one co-plaintiff, without the consent of the other, fraudulently released the defendant, and that was the only mode of defeating the release (7 *Taunt.*, 421; 4 *Barn. & Ald.*, 419; 2 *Crompt. & Mees.*, 384; Tuffs *v.* Gibson, 19 *Wend.*, 639).

In the Court of Chancery, an application made even after the trial of a feigned issue, and at any time before the final decree, would be in time, as the rule is stated by Chancellor Walworth, if made immediately after the discovery of the fact (Smith *v.* Smith, 4 *Paige*, 432–438).

Under the former system, if this suit had been pending in the Court of Chancery, the defendant might, perhaps, have filed a cross bill, on the state of facts now existing. But not having been filed until after the original suit was at issue, the Court of Chancery would not stay proceedings in the original action, without a proper excuse was shown for neglecting to file the cross bill until the original suit was at issue (2 *Barb. Ch. Pr.*, 134).

As permission to put in a supplemental answer, and the putting in of such an answer, necessarily prevents a decision of the action until after a trial of the matter embraced in such answer, there would seem to be no reason for granting permission to put in such an answer, when a Court of Chancery, under the same circumstances, would not have granted such liberty; or if a cross bill might have been filed, would not have stayed the proceedings in the original action on the filing of such cross bill.

In this action, the defence now sought to be interposed arose before the answer of Sheldon was put in; but, although it arose before that time, the defendant Sheldon was ignorant of it at the time his answer was put in.

The application in this case should be determined upon the principles governing the decision of motions, to spread upon the record facts existing at the time the moving party put in his

plea or answer, but of which, without any fault on his part, he was then ignorant.

Such applications, as a general rule, should be granted, unless they have been too long delayed, or the alleged defence is so clearly frivolous, that there is no reasonable ground for believing that any two minds conversant with such matters can differ in their conclusions respecting it; or the defence is so inequitable in its nature, that the permission sought should be refused for that cause.

In deciding upon the question of *laches*, it should not be forgotten that this application is made by an executor, who is not alleged to have any personal knowledge of the transactions on which the rights of the parties depend. The title of his testator, which is documentary, and on its face apparently good, is assailed by reason of a want of power on the part of those making the transfer to the State of Michigan, to make a transfer, valid as against the creditors of the Morris Canal & Banking Company. To that transaction Mr. Thompson was neither a party nor privy, so far as the court knows. The counsel of Mr. Sheldon, not being before the referee when the release was produced and the stipulation made, would rather be thrown off his guard than put upon inquiry, by the terms of the stipulation. That stated that the facts of the release, which had been omitted, in no way related to the subject of this action. Under such circumstances, considering the volume of papers and mass of details which they embrace, and the remote events on which the claim is founded, and making reasonable allowance for the variety of matters which divide the attention of counsel, we do not feel at liberty to decide that the application should have been denied on the mere ground of laches.

Should it have been denied on the ground that it is entirely clear that the release would be no defence at law; or, if a strict legal defence, that it is an inequitable one?

The courts have refused permission to amend a plea, after the time to plead as a matter of right had expired, by pleading usury, or the statute of limitations, or any matter which would operate as a forfeiture of a just claim.

The sum lent and interest, the court regarded as a meritorious cause of action, and a defence which would forfeit that, without the payment of any part of it, as inequitable. So they

regarded it as inequitable that a plaintiff should be deprived of an honest debt because he had waited for payment over six years.

In this case, although the plaintiff has succeeded to the rights of Richard & Selden, and stands before the court as the assignee of their equities, yet the papers show that he bought the cause of action, described in the complaint, after a report had been made to the Court of Chancery of New-Jersey by the receivers, that this claim and others sold with it were doubtful claims, and that the prosecution of them would lead to expensive and protracted litigation, and that $6000 was more than any other person would give for the whole. If the plaintiff fails to recover in this action, he will not fail to realize all he paid for the claim, principal and interest. If he fails, the speculation will, of course, be less profitable than if he succeeds. He bought the controversy knowing that, if he succeeded, it would be by compelling Mr. Thompson to lose the $20,000 he paid for the debt. Thompson bought, so far as we know, supposing there was nothing doubtful, except the intrinsic value of the debt itself. The State of Michigan, to whom it had been transferred, and of whom he bought, was as meritorious a creditor as Richards & Selden, and on general principles of equity equally entitled to be paid.

The facts of the case, therefore, are somewhat different from those on which permission is sought to prevent a recovery of money actually lent by a plaintiff to a defendant, by pleading usury, or that the debt has been due more than six years.

To deny this application is to prejudge the question as to the legal effect of the release and the equities of the parties.

We do not think that it would be a proper exercise of discretion to deny the defendant an opportunity to establish the release, and present the question whether it is in law a bar to the action.

Whether it would violate settled principles of adjudication to allow it to operate as a discharge, can be more accurately decided on the trial of an issue presenting that question, and in the light of all the facts and circumstances of the case.

When it is thus presented and decided, the decision made may be reviewed. If this application is denied, a review of our decision may not be practicable.

If the release, provided it is allowed to operate according to

the natural import of its terms, would exonerate the estate of Mr. Thompson from all claims of the plaintiff, and if allowing such an operation to it would be inequitable, because contrary to the intent of the parties to it. The court before which the action is tried will dispose of all questions in relation to the release, as it may deem just, and be controlled by the same principles of adjudication as governed the Court of Chancery in deciding the same questions, under the same circumstances. If that decision should be thought wrong, the defeated party will have an opportunity to be heard, on the whole case, on appeal.

We think that liberty to file a supplemental answer should have been granted.

The only question which remains relates to the application to correct the referee's report.

The affidavit of Mr. Jordan, that he was not present before the referee when the release was produced and the stipulation made, is not contradicted.

As the referee's report now reads, a stipulation was made before him, by the attorney of Sheldon and the attorneys of the other defendants, and entered in the minutes of the referee as a part of the evidence in the action, which stipulation absolutely and unconditionally asserts that " all the recitals and premises contained and set forth in the release" . . . " relate to matters and things having no connection with the subject of the plaintiff's claim in this action."

It may not be clear that such a stipulation, if effect be given to it, does not stipulate away all pretence of a defence arising from the release.

The release having since been produced in evidence entire, subject to any objection taken by the plaintiff to its admissibility, the plaintiff cannot be in a worse condition if the whole stipulation should be expunged than he would be if it had never been made, except so far as he may be prejudiced by the delay resulting from the proceedings taken to get rid of it.

The proofs should be so far opened as to direct the report to be returned to the referee, to be corrected by him according to the truth of the case, so as to show on its face that neither the attorney or counsel of Mr. Sheldon was present when the stipulation was made, nor was a party to it, if that is the actual truth of the matter. The parts of the order appealed from must

be reversed, and an order entered conforming to the opinion of the court.

If the plaintiff claims nothing from the terms of the stipulation, either as an item of evidence or otherwise, that may be expunged from the referee's report, by arrangement between the counsel. In that event, the order to be entered will only provide for putting in a supplemental answer. The court requires the appellant to stipulate that the order shall be without prejudice to any proceedings already had, except as otherwise expressed in the order, and that any evidence that may be given upon the issues on such supplemental answer, shall be given before the judge, before whom the trial has been progressing, pending the appeal.

HOFFMAN, J., after stating the facts.—While I concur in the result announced in this case, I have been led to my conclusion by reasons somewhat different from those stated, though not inconsistent with them. They are briefly these.

The application, being in an equity suit, is to be governed by the analogous practice in a Court of Chancery. That practice, in relation to facts occurring subsequently to issue joined, or to facts discovered subsequently, was in one of two modes. It was either by a supplemental answer, to file which leave was asked; or by a cross bill, in the nature of a plea *puis darrien continuance*, for which no liberty was required. The latter appears to have been the best settled course (Hayn *v.* Hayn, *Nelson's R.*, 105 ; *S. C. 3 R. in Ch.*, 19 ; *Lube, Eq. Pl.*, 301; 1 *Daniel's Pr.*, 365 ; *Mitford's Pl.*, 81 ; *Willis' Eq. Pl.*, 364, in which is the form of such a bill to set up a release obtained after issue ; Anon. *Hopkins' R.*, 27 ; Smith *v.* Smith, 4 *Paige*, 438 ; Gibs *v.* Gibs, 1 *Bailey's Eq. R.*, 428 ; Scott *v.* Grant, 10 *Paige*, 486 ; Miller *v.* Fenton, 11 *Paige*, 20; Taylor *v.* Titus, 2 *Edwards' Ch. R.*, 135; Jackson *v.* Parrish, 1 *Simons*, 505 ; Tidwell *v.* Bower, 7 *Simons*, 64 ; Barrington *v.* O'Brien, 2 *Ball & Beatty*, 140).

As to the case of matter discovered after answer, although existing before, Jackson *v.* Parrish (1 *Simons*, 505), allowed it to be brought up on a motion for a supplemental answer, to put in a deed since discovered. In Barrington *v.* O'Brien, it was done by bill. In Smith *v.* Smith, Chancellor Walworth speaks of either course being open. In Taylor *v.* Titus, Vice-

Chancellor McCoun appears to consider a supplemental answer proper.

But the Code has adopted, as applicable to each class of cases, the course of supplemental answer; and section 177 provides that the defendant may be allowed, on motion, to make such answer, alleging facts material to the case, occurring after the former answer, or of which the party was then ignorant.

I consider that this section gives a presumptive right to the party, to set up as a new defence, what he could have set up had he known the fact at the time of answering, provided he has brought himself within the provision, and has applied with reasonable promptitude. When he has but recently been apprized of the material matter, and then applies, I do not see that he is asking any such favor of the court as brings him within the doctrine of amendments, or other acts of judicial grace. These presuppose a fault, neglect, or violation of a rule of proceeding on his part, for which he seeks relief. There is nothing of this kind here.

I do not suppose that the court is precluded from exercising a legal discretion in refusing or allowing such applications. As to cases of a new fact or instrument, the court may reject it upon such grounds of fraud or breach of agreement as influenced it in the cases of Tuffts v. Gibbons (19 *Wend.*, 639), and Hickey v. Hunt (7 *Taunt.*, 48). Pleas *puis darrein continuance* were there stricken out, for a direct breach of faith or fraud of the party connected with the subject. And in cases of newly discovered evidence, it may happen that the matter is so plainly frivolous or inadmissible, that it would be stricken out upon demurrer; and hence its introduction in a pleading may be refused.

Yet this course is open to the serious objection, that in such case the party may be without remedy against an erroneous decision, and to the observations of Lord Eldon in Jones v. Wood (1 *Jac. & Walker*, 315), of the inconvenience of deciding such questions of the validity or sufficiency of a release or agreement, upon a motion.

I think the defendant in this case has not been guilty of laches in making his application. I think there is no fault to be attributed to him in connection with the alleged release. I deem it unadvisable to pass upon the sufficiency or operation of the in-

strument in this form, but consider that it should arise upon demurrer or otherwise; and for these reasons I conclude that it would not be a legal exercise of the discretion given by the Code, to refuse the introduction of the answer.

Hence the order at special term should be reversed in this particular.