By the Court,
Leonard, J.:
This appeal is from a judgment and an order overruling appellant’s motion for a new trial. In addition to the facts shown in a former report (9 Nev. 373), the following should be stated: After the cause was 3*emanded by this court for a new trial, in September, 1874, defendant, by leave of the court, on the fifth day of October, 1874, and the eighteenth day of June, 1875, filed supplemental answers, alleging that the original band of ewes replevied by plaintiff in November, 1873, by breeding subsequent to the last-mentioned date, had been increased by a large number of lambs, to wit: four thousand, of the value of two dollars and fifty cents each, and of the aggregate value of ten thousand dollars, United States gold coin; also, that during the same time plaintiff had shorn from the band twenty-eight thousand five hundred pounds of wool, of which twelve thousand *429 five hundred pounds, mentioned in the first supplemental answer, were alleged to be of the value of thirty cents a pound, and sixteen thousand pounds, mentioned in the second supplemental answer, were of the value of twenty-five cents a pound, and of the aggregate value of seven thousand seven hundred and fifty dollars, United States gold coin. In the original answer, defendant, claiming to be the owner of the band, demanded return to her of the two thousand three hundred and seventy sheep described in plaintiff’s complaint, together with their increase, or, in case a return could not be had, judgment for their value in the sum of seven thousand one hundred and ten dollars, and damages for taking and detention in the amount of interest on such value at the rate of ten per cent, per annum from the taking until their return, or payment for their value, and her costs and general relief in the premises.
In the supplemental answers, defendant demanded judgment for a return of the lambs and wool, or their value as alleged, if a return could not be had, in addition to her demand in the original answer.
Plaintiff objected to the filing of the supplemental answers for various reasons stated, and excepted to the rulings of the court permitting them to be filed. The court refused to strike them out on motion, and permitted defendant to introduce evidence in support of them.
The court, of its own motion, instructed the jury as follows: “If the jury find for the defendant in this case, they will consider and find the following matters:
‘ ‘ First: How many sheep were taken by S. Buckley, the plaintiff in this case, from Mrs. A. Buckley, the defendant?
“Second: How many of these were the property of defendant, if any?
‘ ‘ Third: What was the value of the sheep mentioned in the original complaint, and taken, if any were taken?
“Fourth: What has been the number of increase of the original sheep taken, for the years 1874 and 1875?
“Fifth: How many pounds of wool were shorn from the sheep in controversy since the taking by plaintiff in 1878, for the years 1874 and 1875, and how much was the wool worth at the time and place of shearing?
*430 “If you find for the defendant, you will find the number of sheep which the defendant is entitled to have returned, and the value of such sheep; also, the number of pounds and the value of the wool shorn in the years 1874 and 1875 from the sheep in controversy.”
Plaintiff excepted to the giving of the foregoing instructions, also to the rulings of the court admitting evidence in support of the supplemental answers.
The jury found that the defendant was entitled to have the following property returned, and fixed its value as follows, to wit:
2370 sheep, at $3.............................. $7110.00
2500 Iambs, increase on old stock................. 4668.00
17,629 pounds of wool at 25 cts................ 4407.25
Making a total value of.......................$16,185 25
Judgment was rendered for defendant for the return of the two thousand three hundred and seventy sheep, and in case delivery thereof could not be had, for their value, seven thousand one hundred and ten dollars; also, for the return of the two thousand five hundred lambs, being the increase subsequent to the commencement of this action and the possession thereof by plaintiff, or the sum of four thousand six hundred and sixty-eight dollars, their value, in case a return could not be had; also, for the return of the seventeen thousand six hundred and twenty-nine pounds of wool shorn from the band during its possession by plaintiff, or the sum of four thousand four hundred and seven dollars and twenty-five cents, its value, if a return could not be had, besides costs.
Upon the trial, plaintiff offered and endeavored to prove the necessary cost and expenses of keeping and preserving the band, raising the lambs, shearing and marketing the wool, etc., from the thirteenth of November, 1873, when plaintiff took possession of the original band, until the time of trial.
Defendant objected to such proof, and the court sustained the objection, plaintiff excepting. Among the many assignments of error contained in the transcript, appellant espe *431 eially urges as error tbe action of tbe court in permitting respondent to file the supplemental answers; its refusal to strike them out; the admission of evidence in their support; the instructions above quoted, and the refusal of the court to permit appellant’s proof of his proper, necessary expenses.
A careful consideration of these several assignments will necessarily involve a discussion of questions of the first importance, affecting matters of practice as Avell as the rights of property; questions upon which courts of the highest respectability and intelligence have differed, and upon which they do not now agree. In no branch of the law has there been greater contrariety of opinions than upon the proper rules of computation by which a just amount of indemnity for the wrongful taking of personal property may be ascertained. The section of the statute which defines the rights of parties is, itself, in some respects, difficult of exact comprehension, and the facts and circumstances of the many cases that must be brought within and controlled by its provisions, are so different that courts have always found in this class of cases questions not easily solved. The case in hand presents, at least, its share of difficulties.
Section 202 of the civil practice act provides that, “In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, or the value thereof, in case a delivery cannot be had, and damages for the detention, or the value of the use thereof. If the property have been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for the return of the property, or the value thereof, in case a return cannot be had, and damages for taking and withholding the same, or the value of the use thereof.”
It is said in the case of Lambert v. McFarland (2 Nev. 59), that the primary object of this action is the recovery of the property, and judgment for its value in damages is only authorized when a delivery of the property itself cannot be had.
It is'true that judgment for the value of the property is *432 only authorized in ease delivery of the property itself cannot be had; but it is also true that, in a proper case, damages for detention, or for taking and withholding the property, or the value of its use, may be awarded to the prevailing party, whether a return can be had or not. By this action, the law intends to give a complete remedy to the party entitled to possession, not only as to the property itself, but also in respect to damages which are the natural result of the wrongful act; and, therefore, it provides full compensation for the injury, by granting a return of the property to the rightful owner, or its value, if a return cannot be had, and at the same time legal damages. (Barrage v. Melson et ux. 48 Miss. 244.)
It is evident to our minds that recovery of damages in a proper case is as much a primary object in an action of this kind as is the recovery of the property in specie; and that the prevailing party should be permitted to maintain his rights in respect to damages, on account of a wrongful taking and detention, as Avell as his rights in relation to the property itself. As we understand counsel for appellant, it is claimed that the court erred in permitting respondent to file supplemental answers, and to sustain them by proof, because neither the lambs nor the wool had an existence at the time the action Avas commenced, and, therefore, Avere not proper subjects of litigation in this action brought to recoAer possession of the original Hock.
It will not be denied that in an action of replevin it is not competent to the defendant, by his ansAver, to introduce a neAV and distinct subject-matter of litigation by claiming of the plaintiff the release and return of other and distinct personal property, nor could he properly claim or recover damages for taking or Avithholding such property, or for the value of its use.
But let us see if the rule of practice just stated applies to the case in hand. Although it is true that at the commencement of this action the original flock only Avas in existence, we have no doubt that their increase, and the wool subsequently shorn from the baud, are also proper subjects of litigation in the same action. If the original *433 band belongs to respondent, it is certain that she has rights in the lambs and wool, which the law will protect in this or a subsequent action. All the rights of the parties should be settled in one action, if this can be done without doing violence to well established rules of practice or going counter to the provisions of law. As a rule in actions of this charactei-, and such is the ease here, all, or nearly all, damages for detention, or for the use of the property, accrue after the defendant files his answer. In such cases he is unable to insert in his pleadings even a proper general allegation of damages; and certainly, in cases where he is obliged to plead special causes of damages, he oftentimes may be unable to frame his pleadings so as to obtain full compensation for his injury. And yet, the statute declares that he may have damages for taking and withholding the property, or the value of its use in every case. Notice the language of the statute: “If the property have been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or the value thereof, in case a return cannot be had, and damages for taking and -withholding the same, or the value of the use thereof.” It is plain that the “damages for taking and withholding” referred to are such as accrue after the action is commenced. They are damages which accrue after the property has been delivered to the plaintiff, and that can never be done until after the commencement of the action. So, aside from the general rule allowing damages accruing after the commencement of the action, where the subsequent damages are the mere incident or accessory of the principal thing demanded, or where no subsequent action can be maintained for them, it is plain that the statute, in a proper case, and with proper pleadings, permits judgment in favor of defendant for damages that accrue subsequent to the commencement of the action on account of a wrongful taking and withholding of the property in dispute by plaintiff. Admitting as a fact, then, that the original band belonged to respondent at the time they were replevied by appellant, as the jury found, and so continued until the trial, it follows that re *434 spondent was entitled to judgment for tlieir return, if a return could be had; otherwise, their value, together with such damages as with their return in one case, or their value in the other, was necessary in order to completely indemnify her on account of the wrongful act of appellant. And under the maxim, partus sequilar venirem, her rights relativo to the increase were precisely the sgmg^as tli°sj stated concerning the original flock. In dMiuamm, v. Jam~ ^#9»* (12 Wheat. 5w), the court say: “The issue is, we believe, universally considered as following the mother, unless they are separated from each other by the terms of the instrument which disposes of the mother.” And in Seay v. Bacon (4 Sneed. 103), it is said: “ By our law, the issue of the female slave follows the condition of the mother. The children are a part of the mother, and potentially exist in her before they have a being. The ownership of the mother carries with it the property in the children born of her during the period of such ownership. The mother and her issue are treated, in respect to the title and rights of the owner, as an aggregate property. Whatever affects the rights or remedies of the owner as respects the mother equally affects his rights and remedies in respect to her issue.”
The case of Jordan v. Thomas (31 Miss 558), was an action for the recovery of a slave named Hannah and her child John, and her future'increase. The complaint alleged the value of Hannah and John was two thousand dollars. John was born after defendant was possessed of Hannah, and before commencement of the action; but subsequent to its commencement Hannah gave birth to another child. Plaintiff recovered judgment for the three slaves. Defendant appealed, and urged as error the awarding of a slave to plaintiff not embraced in the issue. He also contended that this child, not having an existence at the commencement of the suit, could neither then give the plaintiff a cause of action, nor constitute part of the subject of litigation.
The court say: “It maybe true, as a general proposition, that things which did not exist at the commencement of the *435 suit could not be embraced in the judgment of the court. But this rule, however correct it may be as a general rule, can have no application to that which is merely an incident to the subject-matter of the suit. For instance, a suit may be commenced to enforce the payment of a debt the day after it is due. No interest has then accrued, yet interest is recovered, not that it existed when the suit was commenced, but because it is an incident to the subject-matter. So in regard to the hire of slaves, to recover which an action is brought; and indeed, we may say in regard to everything which is but an incident, or profits accruing pending the litigation. When, therefore, the jury determined the plaintiff’s rights to the slave, they at the same time determined that which was incidental to the right. The title to the mother carried with it a title to her offspring when born. Having a right to recover the mother, the plaintiff could recover that which the mother produced pending the suit, and the only question which could arise would be, whether it was even necessary to name the offspring in the judgment of the court.”
See, also, McVaughters v. Elder (2 Brevard, S. C. 12), and Tyson v. Simpson (2 Haywood, N. C. 321), wherein it wasdecided thatupon the question under consideration, there was no distinction at that time, as objects of property, between negroes and domestic animals.
But respondent could not recover a valid judgment for the wool itself, for the reason that the moment it was shorn it became separate, independent property; and thereafter, in this action, brought prior to shearing to recover the sheep, etc., it could no more be recovered in specie than could wool shorn from other sheep belonging to respondent, but in the wrongful possession of appellant.
As to the wool, respondent’s remedy was judgment in damages for taking and withholding the sheep, or for the value of their use. If the property sued for had been milch cows, it would hardly be claimed that judgment for a return of their milk, or the butter or cheese made therefrom, would be proper in an action to recover the cows. In that case respondent’s remedy would have been judgment in *436 damages for taking and withholding the cows, or for the value of their use. It is equally so in this case as to the wool.
Briefly stated, then, conceding the verdict of the jury to be correct as to the ownership of the original flock, respondent was entitled to a judgment for the return of them, and the increase if a return could be had, together with such damages as were necessary, if any, with the return, to indemnify her for all certain, actual losses sustained on account of the unlawful taking and withholding, or on account of the use of the sheep.
If a return could not be had, she was entitled to judgment for the value of such portion of the original band and increase as appellant was bound to return or pay for, together with such damages as were necessary, with the value, to indemnify her for all certain, actual losses sustained.
As to the proper method of ascertaining and computing damages (no question being raised as to the value of the original flock, or the increase, or as to the proper time when the value should be fixed), we shall speak hereafter.
Nor are we called upon to decide whether or not the natural losses of sheep, from year to year, should be deducted in ascertaining the number to be returned, or their value in case a return cannot be had, for the reason that testimony as to such losses was admitted by the court, and respondent concedes that such deduction should be made. We do not, therefore, consider this question.
Such, then, having been the rights of respondent, it was the privilege and duty of the court to permit any amendments, or supplemental pleadings that were permissible under well-established rules, and were necessary for the protection of the rights of the respective parties.
All the facts alleged in the supplemental answers occurred after the original answer was filed, and respondent could not, at that time, have known them. They were all consistent with, and in aid of the case made by .the original answer. They did not bring into the case any new cause of action, or any controversy that was not, in fact, included in the issue originally made. Under such circumstances, *437 supplemental pleadings should be allowed. (Sedgwick on Meas. Dam. 124; Graves v. Niles, Har. Ch. (Mich.) 333; Barneys. Green, 18 Ala. 771; Wattson v. Thibou, 17 Abb. Pr. 184; Hoyt v. Sheldon, 4 Abb. Pr. 59; Rundle v. Little, 6 Adol. & Ellis, N. S. 176; Boyd v. Weeks, 2Denio, 321; Bristol Jlanufact. Co. v. Gridley, 28 Conn. 212.)
There is yet another reason why supplemental answers were proper. It is well settled that damages which necessarily result from a wrongful act may be shown and recovered under the ad damnum or general allegation of damages, for the reason that the opposite party must be presumed to be aware of the necessary consequences of his conduct, and therefore will not be taken by surprise in the proof of them. But damages which are the natural, but not the necessary consequences of the act complained of, must be particularly specified, or evidence of them will not be permitted at the trial. (2 Greenl. Ev. 232 et seq.) . And although it is frequently much more difficult to apply the rule to the many cases that arise than it is to understand it in general terms, it is always safer to plead specially in cases of doubt. We are of the opinion that the damages allowable to respondent on account of the loss of -wool were special in their nature, and should, therefore, have been particularly specified. (Teagarden v. Hetfield, 11 Ind. 522; Stevenson v. Smith, 28 Cal. 104; Adams v. Barry, 10 Gray, Mass. 361; Parker v. City of Lowell, 11 Gray, 358; Sedg. on Meas. Dam. 730 et seq.) The proper, particular specifications were necessarily made by supplemental answers. They could not have been made by amendment.
It is true that respondent asked a return of the wool in specie if a return could be had, otherwise its value, instead of judgment in damages for taking and witholding the sheep or the value of their use; but that fact was no obstacle against her receiving whatever relief she was entitled to demand under the facts alleged in the pleadings and established by proof.
It follows, therefore, that the court did not err in permitting the supplemental answers to be filed, nor in refusing to strike them out, nor in admitting any legal evidence un *438 der them which, tended to establish the rights of the respective parties.
We now come to the last assignments above mentioned: The jury was instructed to find the increase of the original band for the years 1874 and 1875; also the number of pounds of wool shorn from the whole band subsequent to the time they were taken by plaintiff in 1873, for the years 1874 and 1875; also, the value of the wool at the time and place of shearing; also, the number of sheep which defendant was entitled to have returned and their value. Plaintiff was not permitted to prove the value of his labor and expenditure, and the jury found a verdict as already stated.
It is claimed by respondent that, notwithstanding the refusal of the court to allow testimony showing the amount and value of appellant’s labor and expenses, and notwithstanding the instructions of the court, the jury did, in fact, make liberal allowances for all of appellant’s care, labor and expenses, and that if the court erred the jury made full amends therefor. We can only say in reply that if they did so, the record does not disclose the fact to our satisfaction; and further, if they did so, they acted contrary to the spirit of the fourth and fifth instructions, and in the absence of testimony offered but rejected at the trial. In cases of this character, it seldom, if ever, happens that exact justice can be meted out to both parties, but we think it may be regarded as settled by reason and authority that, in the absence of fraud, intended wrong or willful negligence, the aim of the law is to compensate the injured party for his less as nearly as possible, and not to inflict punitory penalties .upon the wrong-doer.
What the rule may be where the elements of fraud, malice and wrong accompany the taking, it is unnecessary to inquire, for in this case no facts appear which take it out of the general rule stated. We find no evidence that in commencing the action and taking possession of the original band, according to the forms of law, or the subsequent retention of the property in controversy, appellant was actuated by any improper motive, or that he intentionally committed a wrong upon respondent. And, conceding that the *439 verdict of the jury is correct as to the ownership and consequent right of possession of the sheep in question, we can only conclude that appellant was innocently in error as to his rights, and that the commencement of this action and the taking and retaining possession of the property was but an honest assertion of a supposed claim. (Single v. Schneider, 24 Wis. 301.)
Upon the question of “ damages for taking and withholding the property, or the value of its use,” we shall therefore consider the case stripped of all elements of aggravation on the part of appellant.
"What, then, were the rights of the respective parties in the matter of damages, considering the value of the property in dispute as found by the jury, satisfactory to both parties?
In cases where exemplary damages cannot be awarded, and the value of the property in dispute has been appreciated by the labor and expenditure of the unsuccessful party, the extreme doctrines enunciated are, on one side, that the full measure of relief is the value at the time of conversion, and interest on such value until trial or judgment, as damages, if the property cannot be returned; and on the other side, that it is at least the value of the property in its improved condition, without any deduction for necessary labor and expenditure in changing its condition and increasing its value. The latter view, it seems, was entertained by the court below at the trial of this cause, but we think erroneously. The first theory, if carried out, in many instances fully indemnifies the injured party; but in others it falls far short of adequate compensation. (McBain et al. v. Austin, 16 Wis. 87.) The second, as in this case, frequently makes more than indemnification to the injured party at the expense of the wrong-doer.
The hvw aims to make good the certain, natural and proximate losses of the one, but there it stops; unless, after full compensation is made, there yet remains in the hands of the other a pecuniary benefit or profit. In such case, we think with the court in Suydam v. Jenkins (3 Sandf. 624), the wrong-doer should be required to pay beyond indemni *440 fication to the extent of his gains. No person should be permitted to enrich himself by the wrongful use of another’s property, no matter how innocent his intentions may have been in taking and withholding it; and, certainly, if he has acted in good faith, with equal truth it may be said that he should not be compelled, at a personal sacrifice, to pay beyond the actual damage sustained in consequence of his conduct. This case is, in many respects, analogous to that class of cases above referred to, where the property honestly, but wrongfully converted, has been improved, and its intrinsic value enhanced, by the labor and expenditure of a wrongdoer. The value of the band at the time of trial was much greater than that of the original flock, and the value of the ■wool being added, the difference is increased still more. In such cases, it is by no means an unvarying rule, in trover even, to give to the successful party the benefit of the proper necessary labor and expenditure of the other in addition to his real damages; and in replevin, Avhen punitory damages are not allowable, if a return cannot be had, the rule very generally adopted, and certainly the one most consonant with the principle of awarding complete indemnity to the owner, and doing no injustice to the wrong-doer, is to allow the latter, out of the enhanced value, all of his legitimate outlay, or such portion as remains after the indemnification of the former is assured. There are reported cases -which not only give to the rightful owner the property itself, in its improved state, if a return can be had, but also its enhanced value if it cannot be returned, without any deduction for the expenditure of the wrong-doer after the true owner has been fully compensated for his actual damages. To this rule we cannot give our concurrence in cases like this, for it would confer upon one party more than he can in justice demand, and take from the other that which he has a right to call his own.
It is generally and perhaps always true, so long as identification is practicable, or until the original property taken becomes of insignificant importance in comparison with the article in its improved and altered condition, that the owner is entitled to that of which he has been -wrongfully de *441 privect without making compensation to the wrong-doer for his expenditure, for the reason that as a rule the property to which he is entitled and of which he has been deprived without fault on his part, cannot be separated from that portion which is not in fact his, and in order to obtain the former he is compelled to take the latter. Under such circumstances, the wrong-doer must lose and the rightful owner gain. But when compensation in money is to be given for the property taken, together with damages for taking and withholding the same, or for the value of its use, a different rule in reason and justice should, and in our opinion does, obtain, by great weight of authorities. In such case, the rights of the respective parties can and should be protected. (Single v. Schneider, 24 Wis. 300; Single v. Schneider, 30 Wis. 570; Hungerford v. Bedford, 29 Wis. 345; Suydam v. Jenkins, 3 Sandf. 614; Moody v. Whitney, 38 Me. 178; Hyde v. Cookson, 21 Barb. 103; Wetherbee'v. Green, 22 Mich. 311; Herdic v. Young, 55 Pa. St. 178; Curtis v. Ward, 20 Conn. 206; Note a to Baker v. Wheeler, 8 Wend. 508; Sedgwick on Meas. Dam. 501, and Note 3.)
Applying these principles to this case, if a return could not be had, and considering respondent’s admissions as to losses of sheep from year to year, she was entitled to judgment for the value of the original flock and their increase less such losses, together with a sum equal to the amount of legal interest upon such values from the time appellant became possessed of the original band and the increase respectively as damage for taking and witholding the property or for the value of its use; for to this much at least the rightful owner is always entitled in an action of this kind. From the balance of the value of the entire flock and the wool at the time of trial, if in the possession of appellant, and if not, the amount received therefor by him, or the amount he could have received, appellant was entitled to deduct his proper legitimate expenses in the care and support of the sheep, their shearing and the disposition of the wool; and the remainder, if any, should have been added as damages to the amount already deducted equal to interest, making *442 respondent’s entire damages for the taking and withholding of the sheep, or for the value of their use.
If a return could have been had, it should have been left to the jury to decide according to the principles herein stated, whether or not respondent, in addition to a return, was entitled to damages, and, if so, the amount.
If the value of the flock to be returned was less at the time of the- trial than the aggregate value of the original band and the increase (the necessary losses being deducted), together with legal interest upon the value of the original band and of the increase from the time appellant became possessed of each respectively until the trial, then certainly she was entitled to the difference in addition to a return, and after deducting such difference, if any, from the value of the wool, appellant should have been allowed from the balance his proper, necessary expenditure, and the remainder, if any, added to the difference just stated, should have been awarded to respondent as damages.
Several assignments of minor importance yet demand consideration. At the trial, one Irwin J. Buckley, a witness for appellant, testified in chief that Henry A. Buckley, deceased, when alive, told witness that while driving a portion of the sheep in dispute to Buckley’s meadows in June, 1871, he lost some five hundred and fifty at or near a place called the “Boneyard,” a rough country where the roads were bad and where sheep might scatter and get lost; that he did not think Henry tried to find the lost sheep.
On cross-examination, counsel for respondent asked the witness this question: “What would have been the reasonable value of those five hundred and fifty sheep left behind by Henry A. Buckley at that time?” Counsel for appellant objected on the ground, among others, that it was not in cross-examination of anything brought out by him. The objection was overruled by the court and an exception taken.
Counsel for respondent urged that the question was material and proper, as tending to show the great improbability of Henry leaving five hundred and fifty sheep behind him. We fail to see how it would tend to show such fact. *443 It might have had a tendency to show that he would not have intended to leave them, but certainly it could not, in the slightest degree, show that he did not do so.
Witness had testified as to what the deceased told him concerning the loss, and the question objected to called for the individual judgment of the witness upon a subject not alluded to on the principal examination. We are unable to see how an answer to this question would have “contradicted, weakened or modified any testimony the witness had given on his direct examination, or any inference which might have resulted from it tending in any degree to support his case.”
If respondent wished to prove the value, she .should have made the witness her own. (Greenlf. Ev., vol. 1, sec. 445; Phil. & Tren. B. B. Co. v. Stimpson, 14 Peters. U. S. 461; Landsberger v. Gorham, 5 Cal. 452; Wetherbee v. Dunn, 32 Cal. 108.)
We agree with the court in Jackson v. Feather River Water Co. (14 Cal. 24), and in Ferguson v. Butherford (7 Nev. 391), that cross-examination ought to be allowed a free range within the subject-matter of the evidence in chief, but if it ranges outside of that there is error. The objection should have been sustained.
Appellant also urges that the court erred in admitting in evidence a certain account book belonging to respondent, who testified that it belonged to Henry A. Buckley when alive, and that it was the book in which he kept his accounts; that the handwriting therein was principally Henry’s, the rest being the handwriting of witness; that the entries were made at or about the time the transactions to which they referred occurred; that it was the book by which Henry settled with persons with whom he had business, and that the entries in regard to the number of sheep received from appellant and returned to him were made by Henry at the time those transactions occurred.
Counsel for appellant objected to the admission of the book in evidence for various reasons stated, but made no objection to any particular entry, nor did they move to strike out any part after the book was admitted. Bespond *444 ent testified positively in corroboration of tbe entries touching this case. We are of the opinion that the preliminary proof was sufficient to justify the court in permitting the book to go before the jury. (Greenleaf on Ev., vol. 1, sec. 118 el seq.; McLellan, Adm’r, v. Crofton, Ex’r, 6 Greenleaf, Me. 307; Doe dem. Patteshall v. Turford, 3 Barn and Adol. 891; Bentley’s Adm’r v. Hollenback, Wright, 169; Odell v. Oulbert, 9 Watts and Serg. 66.) The memorandum on page “J” — “November 12, 1870, my band count 1600” —was, in fact, inadmissible, but no specific objection was mhde to that, and no motion was made to strike it oirt, nor was the court asked to instruct the jury to disregard it.
The record shows that one J. C. Cutting was subpenaed as a witness by appellant, but that he failed to appear when called. The court then ordered respondent’s counsel to proceed in the examination of their witnesses. The court ordered that Cutting be permitted to testify .whenever he should appear. He subsequently came into court and testified. Appellant then called George Buckley, and proceeded to examine him generally, when respondent objected on the ground that plaintiff had closed his case with the exception of the examination of witness Cutting. The court sustained the objection, and in the absence of proof to the contrary, we are bound to presume in favor of its ruling, and conclude that appellant had closed his case ■with the exception stated. The last assignment of error urged is insufficiency of evidence to justify the verdict and judgment, and that they are against law. The testimony being conflicting as to the ownership of the property in dispute, we cannot disturb the judgment upon this point. In other respects we have already pointed out the errors affecting it.
The judgment and order appealed from are reversed and the cause remanded.